Richard Lee OWEN, II, Appellant,

v.

STATE of Indiana, Appellee.

No. 979S243.

Supreme Court of Indiana.

Nov. 8, 1979.

Richard Lee Owen, II, Michigan City, pro se.

Theodore L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

This opinion is occasioned by the filing by appellant Richard Lee Owen, II, of a Motion filed *pro se*, which, though not in proper form, we will treat and consider as a petition for rehearing.

The appellant was found guilty in St. Joseph Superior Court of the crime of commission of a felony while armed and sentenced to a term of ten (10) years. He appeared *pro se* in the trial court and before the Court of Appeals, as he does before this Court.

The Fourth District Court of Appeals reversed the conviction based upon the trial court's denial of defendant's motion to strike the jury panel. *Owen v. State*, (1979) Ind.App., 388 N.E.2d 292. Seven issues were raised in that appeal, but because the Court of Appeals found grounds for reversal on the issue concerning selection of the jurors and reversed the conviction of appellant, the remaining six issues were not considered by the Court of Appeals. On petition to transfer to the Supreme Court, we found the Court of Appeals in error in their holding on the juror issue, granted transfer and vacated the decision of the Court of Appeals. In doing so, our opinion, issued on September 5, 1979, considered only the single issue of the selection of the jurors and mistakenly failed to consider the other issues raised by appellant Owen in the Court of Appeals. By his Motion the appellant brings this situation to our attention and requests that we consider the other issues raised in his original appeal. In the furtherance of convenience and avoidance of unnecessary cost or delay, we grant rehearing and our opinions issued on September 5, 1979, are withdrawn and the previous majority opinion on transfer is incorporated in this opinion, which includes consideration of all additional issues raised by the appellant.

The only basis the Court of Appeals used for reversal in *Owen v. State*, (1979) Ind. App., 388 N.E.2d 292, was the fact that St. Joseph Superior Court judges had appointed two jury commissioners, and the statute in 1969 provided for four jury commissioners for service of the Superior Courts.

Prior to 1969, the statute provided that the judge of the Circuit Court was to appoint two jury commissioners for selection of grand and petit jurors to serve in the various courts of the county. In 1969, the St. Joseph Superior Court reorganized into an integrated court consisting of five judges and enabling statutes were passed by the Legislature structuring the make-up of this Court. Ind.Code § 33–5–40–18 (Burns 1975) provided that:

"The superior court shall, in each calendar year, appoint for the next calendar year four [4] persons as jury commissioners, and the law with reference to jury commissioners appointed by the circuit court as now made or may hereafter be made, shall fully govern said jury commissioners as appointed by the superior court in all things, conditions and qualifications, and said jury commissioners shall prepare and draw the jury for the superior court, both petit and grand, as the law directs the same to be done by the jury commissioners for the circuit court."

However, it is important to note the following provision of that statute which is as follows:

"Provided that the superior court may order on what day [of] the term said jurors shall be summoned to attend the court, and that any judge of the court may order the selection and summoning of other jurors for the court whenever the same may be necessary. The said jury drawn by the jury commissioners shall be the jurors, either petit or grand,

for the superior court, and they shall serve the entire court, and before any judge of the court where their services may be required: Provided, however, That they need not serve in any particular order in which they were drawn by the jury commissioners provided in their selection to serve before any judge, the selection shall be on a fair and impartial basis.

If at any time a jury shall not be drawn, then the clerk of the court shall select from among the properly qualified residents of such county, a jury for such term who shall be summoned and considered in all things as a regular panel of the court. The court may call one or more juries during any one term, and may by rule provide for how long any jury shall sit. [Acts 1965, ch. 266, § 19, p. 727; 1969, ch. 306 § 4, p. 1279.

 Appellant went to great length to show, by using census figures on population make-up in the county, that in fact the jury did not contain percentages of certain, age, sex and race groupings that he felt would have been consistent with an impartial jury. There was no showing however, in his arguments that the juries were not properly selected. The two jury commissioners testified as to their selection of the jurors with the Clerk of the Court and indicated that their selection was made as the statute provided it was to be done. It is apparent that the legislature provided for more manpower in the jury commissioners inasmuch as the jury commissioners were going to be selecting jurors for five courts. It is also apparent that the judges of the St. Joseph Superior Court should have appointed four commissioners. However, it certainly cannot be said that a failure to comply with that statute was such a substantial violation of the intention of the legislature to provide for the selection of non-partisan and impartial jurors that appellant was prejudiced by the procedure used. The statute to which he refers provides that if a jury is not drawn by the jury commissioners, the Clerk of the Court shall have the authority to draw from the properly qualified residents of the county as long as all requirements for selection of jurors are followed and that this selection shall constitute a regular panel of the court. Thus, the legislature has provided that when none of the jury commissioners act in their selection of jurors, the Clerk is qualified to do so. We stated in *Shack v. State*, (1972) 259 Ind. 450, 459, 288 N.E.2d 155, 162, "The major requirement should be that the system of selection is not arbitrary . . . and complete impartiality should be sought." We have held that where there has been substantial compliance with the statutes directing selection and calling of jurors, minor irregularities in compliance with the statutes will not create prejudice to the defendant's substantial rights. *Shack, supra, Harrison v. State,* (1952) 231 Ind. 147, 106 N.E.2d 912; *Rudd v. State,* (1952) 231 Ind. 105, 107 N.E.2d 168. Our statutory method for drawing juries was devised for the purpose of putting selection beyond suspicion of advantage or favoritism and making the selection, as nearly as possible, random. There is no showing here that the jury commissioners did not in all respects follow the dictates of the statutes in their selection of jurors. There was no showing of any systematic exclusion of any class of persons to serve on the jury. The mere fact that the actual jury did not contain percentages of certain groups to the satisfaction of this appellant does not indicate improper action by the commissioners. *Lake v. State,* (1971) 257 Ind. 264, 274 N.E.2d 249.

Appellants substantial rights have not been prejudiced by this jury selection. Transfer is granted. The opinion of the Court of Appeals is vacated, and the trial court is affirmed on this issue.

The six additional issues to be considered herein are claims of alleged error involving (1) the refusal of the trial court to allow the defendant to read a case to the jury during final argument; (2) the refusal of the trial court to provide the defendant with a private investigator at public expense; (3) the taking of judicial notice of pleadings signed by the defendant, and allowing witnesses to testify to similarities in handwriting of those writings and signatures and the writ-

ing in a note delivered to the robbery victims; (4) the sufficiency of the evidence on the age of the defendant; (5) the refusal of the trial judge to order the state to furnish information to the defendant regarding prospective jurors; and (6) the failure of the trial judge to give the defendant good time credit for time served in jail awaiting trial.

On June 18, 1976, the Ponderosa Steak House in St. Joseph County, Indiana, was robbed at gun point. The manager and two other employees of the Steak House testified that the defendant entered the store and talked with the manager for about an hour. He then left and re-entered the store a short time later, engaged the manager in further conversation, delivered a hand-written note announcing a robbery, pulled out a gun, and took the money in the cash register. Defendant was identified as the robber by all three of the employees of the Steak House.

### I.

■ At closing argument defendant requested permission from the trial court to read to the jury from the case of *Fleming v. State*, (1894) 136 Ind. 149, 36 N.E. 154. The issue in the *Fleming* case pertinent to appellant's position concerned alibi. At trial Fleming had claimed he was with a young lady at the time the crime was committed, and therefore, could not have been at the scene of the crime. He tendered an instruction to the court on the defense of alibi and its consideration by the jury. The court refused the instruction. It was found that the trial court had erred in refusing to give the alibi instruction where evidence of alibi had been presented by the defendant in his defense.

We have held on previous occasions that since Article I, § 19 of the Indiana Constitution gives the jury in criminal cases the right to determine the law as well as the facts, it is permissible and proper for opinions to be read and discussed before the jury in final argument. *Hubbard v. State*, (1974) 262 Ind. 176, 313 N.E.2d 346; *Bryant v. State*, (1933) 205 Ind. 372, 186 N.E. 322.

In this case, appellant Owen raised the defense of alibi and presented, in addition to himself, other witnesses to testify that he was in a motel in Indianapolis that evening, rather than at the scene of the crime. He argued these facts to the jury in final argument and read the statute referring to alibi. The trial court instructed the jury on alibi and there is no claim by this appellant that the instruction given was improper or inadequate. There is, therefore, nothing further the defendant could have presented to the jury for their consideration by reading this case other than the rule established by *Fleming, supra*, that the court should instruct on alibi and which the jury heard in the instructions that were given by the trial court. There is no showing therefore, that the action of the trial court in this regard in any way prejudiced the defendant. Since appellant does not show or even contend that he was in any way prejudiced by the court's ruling, except the bare statement that he had a right to read a case to the jury and was not permitted to do so, there is no reversible error presented to us on this issue. *Bobbitt v. State*, (1977) 266 Ind. 164, 361 N.E.2d 1193; *Hester v. State*, (1974) 262 Ind. 284, 315 N.E.2d 351.

### II.

■ The appellant's next contention of error is that the trial court refused appellant's request to appoint and hire a private investigator at public expense. We considered the same issue in *Roberts v. State*, (1978) Ind., 373 N.E.2d 1103. We held in that case that there is no constitutional mandate under the due process clause that one accused of crime be entitled at public expense to any type of expert whose help the accused might consider relevant in the particular case. The same is true here. The trial judge may appoint or authorize the hiring of experts or lay investigators if, in his discretion, he thinks it is necessary under the circumstances. We would disturb his judgment only if there was shown to be abuse of that discretion. Here, appellant chose to proceed *pro se* and so took upon himself responsibilities that an attor-

ney would have had in representing him and voluntarily relinquished some aid that might have been available to him through an attorney. The specific request was to have a private investigator appointed and hired to determine whether or not any more witnesses could be found who might have seen him at an Indianapolis motel on the night of the crime in question. He suggested other patrons of the motel might possibly be located. As a matter of fact, the State did make such a check with the motel and found there was no one with a forwarding address who could be located from the records of those who had occupied rooms near the one allegedly occupied by the defendant. Phone calls to the management of the motel by the defendant himself revealed the same facts. Defendant did offer his alibi evidence, testifying himself that he was on the premises of the motel in Indianapolis on that night, and presented two other witnesses who testified for him in the same manner. Under these facts and circumstances, we cannot say that the trial judge abused his discretion in refusing to appoint and hire private investigators at public expense for the appellant and no error can therefore be occasioned by such refusal. *Roberts v. State, supra; United States ex rel. Smith v. Baldi,* (3rd Cir. 1951) 192 F.2d 540, 547, aff'd., (1953) 344 U.S. 561, 568, 73 S.Ct. 391, 395, 97 L.Ed. 549, 556.

### III.

During the robbery in question, the robber left a hand-written note. The State asked the court to take judicial notice of the pleadings and filings of the appellant in this cause in which he had acted *pro se* and in which his handwriting and signatures appeared. The handwriting on the pleadings filed by him was to be used for comparison with the hand-written note left at the scene of the crime so that it might be determined whether or not the same person had written them. One Captain Buck, a police handwriting expert, and another handwriting witness, were allowed to testify that they compared the signatures and the writing on the court exhibits and filings with the hand-written note left at the scene

of the robbery. They testified that the signatures and writing were written by one and the same person. The witnesses did accept it as fact that Richard Lee Owen had written the pleadings that were filed with the court and said the documents were all written by the same person. At times in their testimony the witnesses stated as an accepted fact that Owen had, in fact, written the pleadings and signed his name to them. Appellant claims the court had a right to take judicial notice of the fact that these were pleadings and documents filed in the case, but that the court did not have the right to take judicial notice of the fact that the defendant had, in fact, written them or signed his name to them. His argument was that these pleadings and filings had been mailed to the judge and to the court and that such writing was not done in the presence of the judge, so that he could not accept as fact that Owen had, in fact, done the writing or signed his name. Interestingly enough, appellant acted as his own attorney in this cause throughout the pleading stage, tried the case before the jury, argued these matters and spoke of them before the jury during the trial and in final argument. He testified as a witness in his own behalf and never denied that he was the one who actually wrote all of the pleadings and signed his name thereto. A trial judge can take judicial notice of pleadings and filings in the very case which is being tried. Although they are an integral part of the case, the jury does not usually see them as they are not necessarily pertinent to the determination of the facts which are before the jury. The court having taken judicial notice of them, they can then be presented to the triers of the facts for determinations that need to be made by them only. It does not seem unreasonable under the circumstances of this case, for the court to take judicial notice of the fact that the defendant is the one who did, in fact, sign these pleadings. The trial judge may take judicial notice of such a fact, and a rebuttable presumption arises which requires the defendant to come forward with any evidence to dispute the presumption.

*Sumpter v. State*, (1976) 264 Ind. 117, 340 N.E.2d 764. There is no showing here that the appellant ever attempted to demonstrate that the documents judicially noticed were not written by him or that he attempted to offer evidence to rebut the fact noticed, that they were his writings. Rather, he objected to notice being taken of them because the trial judge did not personally see him sign them.

The defendant openly and admittedly tried his own case and, in every respect, acted in his own behalf in this matter. He took advantage of the very pleadings, such as alibi notices, filed by him, by reason of the fact that these very issues were tried in the cause. The appellant would have the court accept these pleadings and filings as his act and deed to place his defenses at issue so that they might be tried in the cause, but object when his responsibility and sponsorship of them requires the obvious conclusion that he did, in fact, write them. If, of course, he did not in fact, write them and they were done by someone else, some interloper, then they are not official pleadings in the cause and these issues were not properly presented for trial. This far from profound discussion could be brought to resolution by simply stating that from a standpoint of practical reality and common sense, the court was not unreasonable in indulging in the presumption that the defendant did, in fact, sign these pleadings. The trial court could have taken judicial notice that the documents were in the record filed on behalf of the defendant and have permitted the jury to infer that they were, in fact, signed by the defendant, but, under the facts and circumstances here, the defendant was not prejudiced by the manner in which the trial judge handled it. *Sumpter, supra; Tucker v. Hyatt*, (1895) 144 Ind. 635, 41 N.E. 1047.

### IV.

■ The defendant-appellant next claims there was an insufficiency of the evidence in that the state presented no direct evidence as to the age of the defendant, more particularly that he was over the age of sixteen (16) years. The defendant was charged with commission of a felony while armed with a deadly weapon under Ind. Code § 35–12–1–1 (Burns 1975) which reads in part:

" . . .

Any person who being over sixteen (16) years of age commits or attempts to commit any felony while armed with any dangerous or deadly weapon, . . .."

It is claimed that there was no direct evidence presented by the State to prove that the defendant was over sixteen (16) years of age. This same issue was decided by this Court in *McGowan v. State*, (1977) Ind., 366 N.E.2d 1164. In *McGowan* we held that the State has a presumption in its favor as to both the age and sex of the accused until the presumption is nullified by a properly raised motion to dismiss. No such motion was filed here. Appellant claims that when sentence was to be pronounced he offered as a reason why it should not be pronounced that he wanted to file a motion to dismiss on this issue. The record shows that at this time the trial judge stated that the jury had made a finding of appellant's age as twenty-eight (28). When questioned, the appellant stated that his age at this time was thirty-one (31), which the court found to be his true age. No motion to dismiss or supporting memorandum was filed by appellant on this issue.

The fact that defendant was over the age of sixteen (16) was evident in that he appeared before the jury and they were able to observe his appearance. In addition, Owen testified that in May of 1976 he had been released from the Indiana State Prison after having served almost six years on a sentence there. The sequence of events in his life was presented to a sufficient extent to allow the jury to infer that he was over the age of sixteen (16). *Moore v. State*, (1977) Ind., 369 N.E.2d 628. There is no error on this issue.

### V.

■ Prior to the beginning of trial, the defendant filed a motion for discovery in which he requested any information the

prosecutor might have on members of the jury panel. He indicated he wanted this information to use on the voir dire examination. The court denied this motion. There was no showing that the prosecutor had any information on the members of the jury panel that was not equally available to the defendant. The defendant gave no grounds as a basis for the court to make a blanket order that would require the prosecutor to give to the defendant any information he might have about any of the jurors. The defendant was given equal opportunity to voir dire the jury and he does not make any contention that the voir dire was any less effective or productive for him because of the court's ruling. This specification has no merit.

## VI.

██ Finally, appellant claims that the trial court failed to give him credit for jail time served from the date of his arrest until his conviction on this charge. Appellant was arrested on August 3, 1976. At that time, charges were pending in the St. Joseph Circuit Court and the charge involved in this appeal was pending in the St. Joseph Superior Court. Appellant appeared for arraignment first in Superior Court and then in Circuit Court. He requested a continuance in the Superior Court to prepare for the Circuit Court case. Appellant was tried and convicted in the St. Joseph Circuit Court. He was sentenced there on January 11, 1977. He was tried and convicted in the St. Joseph Superior Court and sentenced there on October 6, 1977. At the time of his sentencing in the St. Joseph Superior Court, defendant's motion for credit for time served awaiting trial was granted in part and denied in part. He was given credit for one-hundred and sixty (160) days served awaiting trial, reflecting the time from his arrest on August 3, 1976, to his sentencing in St. Joseph Circuit Court on January 11, 1977. His motion was denied insofar as it sought credit for jail time served from January 22, 1977, to October 6, 1977.

In support of his claim for credit for jail time served, appellant cites *Franks v. State*, (1975) 262 Ind. 649, 323 N.E.2d 221, involving Ind.Code 35–8–2.5–1 (Burns Supp.1974) [Acts 1972, P.L. 219 § 1] (repealed 1979). In *Franks, supra,* it was the unanimous opinion of this Court that a defendant who was awaiting trials on different crimes during the same period of time and who was convicted and sentenced separately on each should have full credit applied on each sentence. Franks was arrested on October 13, 1971, and sentence was imposed on March 23, 1973. During that same time Franks was tried and convicted in another proceeding. It was held that Franks should have been credited for time served from the time of his arrest on the charge until the time of sentencing on the charge.

Here, appellant Owens was arrested on this charge on August 3, 1976, and sentence was imposed on October 6, 1977. During that time he was also tried and convicted in another proceeding. Appellant's contention is correct that he should be given credit for time served from the day of his arrest until the day of his sentencing and it is so ordered.

Transfer is granted. Rehearing is granted. This cause is remanded to the trial court with instructions to give appellant credit for the time served from the day of his arrest on this charge to the day of his sentencing. The judgment is, on all other issues, affirmed.

GIVAN, C. J., and PRENTICE, J., concur.

DeBRULER, J., concurs in result.

HUNTER, J., dissents with separate opinion.

HUNTER, Justice, dissenting.

I believe the Court of Appeals' decision should be left undisturbed in this case. There is no doubt that the jury in the case at bar was not selected by the number of jury commissioners called for by the statute. Ind.Code § 33–5–40–18 (Burns 1975). Having only half the required number of jury commissioners should not be termed substantial compliance.

The Court of Appeals' decision correctly relies on *Rudd v. State*, (1952) 231 Ind. 105, 107 N.E.2d 168. In that case, one jury commissioner was not present during the placing of names in the jury box or when a grand jury was selected therefrom. Additionally, one person whose name was pulled from the box was never called for service. This Court held that there was not substantial compliance with the relevant statutes and, therefore, "the substantial rights of appellant were harmed . . . ." 231 Ind. at 112, 107 N.E.2d at 171. The importance of the decision in *Rudd* is that it established that when there is no substantial compliance with jury selection statutes, a defendant need not show actual prejudice.

"It seems to us that the proper construction is to hold that an accused, *regardless of his guilt or innocence*, has the right to insist that there be substantial compliance with [the statute], and if these provisions are not substantially complied with, his substantial rights are harmed." 231 Ind. at 111, 107 N.E.2d at 170 [emphasis added].

Furthermore, Judge Emmert noted that: "The only way this court has to enforce substantial compliance with the statutes on juries is to reverse when the issue is properly presented in the trial court and here." 231 Ind. at 113, 107 N.E.2d at 171. The wisdom of requiring that St. Joseph County have four jury commissioners must have been fully determined by the legislature. Since that entire chapter of Title 33 is devoted to the St. Joseph Superior Courts, I am driven to the conclusion that local interests were consulted and their needs taken into consideration.

The requirement of substantial compliance obviously does not contemplate that every statutory instruction be followed perfectly with respect to every minute detail. Judge Emmert noted that each case of this nature is decided on its individual facts. Here only two of four jury commissioners were appointed. Therefore, the instant case is more like *Rudd v. State, supra*, than cases in which this Court found substantial compliance when jury selection failed to comport with statutory requirements in minor respects. See *Madison v. State*, (1955) 234 Ind. 517, 130 N.E.2d 35 (a jury commissioner had not retired when his successor was appointed to act for the time being), *Leonard v. State*, (1968) 249 Ind. 361, 232 N.E.2d 882 (names of prospective jurors for the grand and petit juries were not selected at the same time), or *Shack v. State*, (1972) 259 Ind. 450, 288 N.E.2d 155 (jury commissioners were appointed in December rather than November).

I would deny transfer. I would grant rehearing only for the purpose of denying transfer.