[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 744 
Johnny Ira DeFries, the appellant, was charged with separate indictments with first degree sodomy and first degree rape. After a jury trial, at which he represented himself, he was acquitted of the sodomy charge, was convicted of the rape charge, and was sentenced to life imprisonment without the possibility of parole. He raises nine issues on this appeal of that conviction.
 I
First, he complains that he was denied the right to a preliminary hearing guaranteed by Ala. Code 1975, § 15-11-1.
The appellant was initially arrested on a warrant for sodomy. He demanded a preliminary hearing at his arraignment for that offense. The hearing was set and twice continued, due to the non-appearance of the complaining witness. In the meantime, the appellant was indicted for sodomy and for rape.
The appellant's acquittal of sodomy renders this issue moot. "Only the count upon which appellant was found guilty is subject to appellate review." Hammond v. State, 354 So.2d 280,284 (Ala.Cr.App.), cert. quashed, 354 So.2d 294 (Ala. 1977), cert. denied, 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115
(1978).
Moreover, the purpose of both a preliminary hearing and an indictment is to determine probable cause. See Duncan v. State,369 So.2d 885, 887 (Ala.Cr.App. 1979). "A repetitious inquiry [into] probable cause after indictment is not necessary."Elmore v. State, 445 So.2d 943, 945 (Ala.Cr.App. 1983). Where an indictment is returned prior to the holding of a preliminary hearing, the accused is no longer entitled to a preliminary hearing. Herriman v. State, 504 So.2d 353, 357 (Ala.Cr.App. 1987).
 II
The appellant contends that his Sixth Amendment right of self-representation was infringed because he was deprived of the necessary tools to prepare an effective defense in his own behalf. He claims that the court erred by denying him the funds to hire an investigator, access to a law library, and the assistance of Leslie Watts, a fellow inmate, in preparing for his trial.
 A.
The appellant filed and orally argued a motion for funds to hire an investigator. He insisted that because he was representing himself and was incarcerated, he needed an investigator to help him prepare for *Page 745 
trial, specifically to inquire into allegations that the victim's family had made and had later retracted similar charges against other individuals. R. 83-84.
The trial court reminded the appellant that if he accepted appointed counsel, the attorney could "be not only your eyes and ears out in this county, but . . . your legs too. . . . You've got a right as an indigent to that attorney to do all of that pre-trial investigation and preparation for trial. . . . An attorney would be most beneficial to you, at least in the investigative process." R. 86.
When the appellant persisted in his intention to represent himself, the court stated, "I've tried to give you some advice that you have not accepted, which that's your choice. You've got a perfect right not to do that." The trial judge then took the motion under advisement, stating that he "want[ed] to study up on this motion . . . requesting funds to hire an investigator." R. 89.
The appellant did not bring the motion to the court's attention again until the day of trial. At that time he argued, on a motion for change of venue, that he could not get a fair trial in the county, in part, because he had "filed for the funds to hire an investigator to investigate the facts that surround this crime, and the courts still have it under advisement as best I know about." R. 110. The record does not show a ruling on the motion.
Notwithstanding the appellant's failure to pursue his motion in a timely manner, we assume that he in fact received an adverse ruling on his request for expert assistance. Based on the following authorities, we find no error in the trial court's failure to provide the appellant with funds to hire an investigator.
"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." Faretta v. California,422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). "Although a defendant may not be penalized for exercising his constitutional right to represent himself, Faretta v.California, [citation omitted], 'neither is he entitled to special treatment or benefits not afforded to defendants with counsel.' " State v. Smith, 66 Or. App. 374, 377,675 P.2d 1060, 1063, review denied, 297 Or. 339, 683 P.2d 1370 (1984) (quoting State v. Addicks, 34 Or. App. 557, 560, 579 P.2d 289,290, review denied, 284 Or. 80a, (1978)). Cf. Zeigler v. State,432 So.2d 542 (Ala.Cr.App. 1983) (pro se defendant generally not entitled to special consideration on appeal).
In Owen v. State, 272 Ind. 122, 396 N.E.2d 376 (1979), the Indiana Supreme Court observed the following:
 "The trial judge may appoint or authorize the hiring of experts or lay investigators if, in his discretion, he thinks it necessary under the circumstances. We would disturb his judgment only if there was shown to be abuse of that discretion. Here, appellant chose to proceed pro se and so took upon himself responsibilities that an attorney would have had in representing him and voluntarily relinquished some aid that may have been available to him through an attorney."
Owen v. State, 272 Ind. at 127-28, 396 N.E.2d at 380-81. In a later case, the same court noted:
 " '[O]f course a defendant may represent himself if he so desires. In such situation he must accept the burdens and hazards incident to his position.' . . . One of the 'burdens and hazards' appellant took on by rejecting the offer to have counsel appointed for him was that of doing without the . . . services an appointed attorney could have provided for him. We will not hear him now complain of these burdens and hazards he could have easily avoided."
Yager v. State, 437 N.E.2d 454, 458 (Ind. 1982) (quotingBlanton v. State, 229 Ind. 701, 703, 98 N.E.2d 186, 187
(1951)). See also Roberts v. State, 268 Ind. 127, 130,373 N.E.2d 1103, 1105 (1978) (wherein the court held that generally no abuse of the trial court's discretion is shown where a prose defendant makes requests for "services which could have been performed by . . . counsel"); 2 W. LaFave J. Israel, CriminalProcedure § 11.2(d) at 26 (1984) ("[e]stablishing *Page 746 
sufficient need for a special investigator appears to be especially difficult [for a pro se defendant], perhaps because it is assumed that investigation of the facts is ordinarily within the expertise of counsel") (footnotes omitted). See generally Annot., 34 A.L.R.3d 1256 (1970).
Here, the court informed the appellant that by choosing to represent himself he would forego many benefits, including investigative services, that counsel could perform for him. InPeople v. Marlowe, 167 A.D.2d 692, 692, 563 N.Y.S.2d 272, 273
(1990), appeal denied, 77 N.Y.2d 963, 570 N.Y.S.2d 497,573 N.E.2d 585 (1991), the court observed that the accused's motion for funds to hire an investigator was one of "sundry pretrial motions . . . for the most part directed at eliminating obstacles routinely encountered by pro se incarcerated litigants, difficulties about which defendant was generally made aware by [the trial] court and which defendant presumably took into account by choosing to represent himself." The same is true here. It is clear to us that the appellant "kn[ew] what he [was] doing and his choice [was] made with eyes open," Adamsv. United States ex rel. McCann, 317 U.S. 269, 279,63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).
 B.
It is settled that a pro se defendant who is incarcerated has a constitutional right of access to the courts. Bounds v.Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977);Peoples v. State, 531 So.2d 323, 326 (Ala.Cr.App. 1988). See generally 2 W. LaFave J. Israel, Criminal Procedure § 11.5(e) at 51 (1984). "[Alt]hough this right is not absolute or unconditional, restrictions may not deprive inmates of 'adequate, effective, and meaningful' access to the courts.Bounds, 430 U.S. at 822, 97 S.Ct. at 1495." Peoples,531 So.2d at 326. In order to guarantee the right of access, incarcerated defendants must be provided with "adequate law libraries or adequate assistance from persons trained in the law." Bounds,430 U.S. at 828, 97 S.Ct. at 1498 (footnote omitted). A prisoner is entitled to receive assistance from a fellow inmate unless prison officials provide reasonable alternative assistance. Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747,751, 21 L.Ed.2d 718 (1969).
We have searched the record and do not find that the appellant presented a request, either for access to law books or to the aid of a fellow inmate, to the circuit court before trial. The appellant first raised the issue of non-access to legal materials in his motion for new trial, when he claimed that the unavailability of a law library had prejudiced his defense. Compare People v. Smith, 216 Cal.Rptr. 98, 38 Cal.3d 945, 702 P.2d 180 (1985) (wherein the accused raised denial of access to legal materials three weeks prior to trial).
At the hearing on motion for new trial, the appellant called Sheriff's Deputy Glenn Dewald, supervisor of the Calhoun County jail as a witness. The following occurred:
 "Q. [By the appellant]: Can you tell the court here if there were any discussions with you that concerned my having access to any law books or any other alternate [re]course to the courts? Did we ever discuss this matter?
 "A. [By Officer Dewald]: I don't recall you ever asking for a law book. But you had several papers that were sent out and several papers that came in that I personally handed you and took from you to be forwarded out.
 "Q. Can you recall a conversation whereby I asked you, Mr. Dewald, to have assistance from another confined person in the county jail. . . .?
"A. Yes.
"Q. And do you recall who he was?
"A. Not his name, no.
"Q. Was he Leslie Watts?
"A. It may have been. I don't remember .
 "Q. Okay. In my requesting from him that he assist me I explained to you, I believe correctly, that I didn't have a lot of education and that Mr. Watts had education and I *Page 747 
wanted him to help me in some of the preparation for my trial. Do you recall that conversation?
"A. I remember the conversation regarding it, yes.
"Q. Did you grant that request, Mr. Dewald?
"A. No, sir.
"Q. Can you tell the court why not?
 "A. I contacted one of the circuit court judges and asked them if it was a requirement that I supply you with assistance. They told me no.
 "Q. And you denied me having him assist me while confined over there?
"A. Yes." R. 720-21 (emphasis added).
The denial of the appellant's request for assistance from a fellow inmate may have violated the holdings of Bounds v. Smith
and Johnson v. Avery, supra. Nevertheless, the appellant did not complain in a timely manner about the deprivation he now alleges he suffered. The right of self-representation does not exempt a party from compliance with the rule that error be timely preserved below. Hill v. State, 571 So.2d 1297, 1299
(Ala.Cr.App. 1990). Even constitutional issues must be seasonably raised or they are waived. Cagle v. State,504 So.2d 1225, 1226 (Ala.Cr.App. 1987); Johnson v. State, 480 So.2d 14,17-18 (Ala.Cr.App. 1985). A defendant who fails to raise an issue regarding the regularity of proceedings preliminary to his trial may not ask that the issue be reviewed on appeal when it was first presented in a motion for new trial. Wadsworth v.State, 18 Ala. App. 352, 92 So. 245 (1922).
It appears to us, moreover, that the appellant invited or acquiesced in the circumstances resulting in his own non-access to legal materials. In its order denying the appellant's motion for new trial on this issue, the trial court found the following facts, which are supported by the record:
 "Defendant DeFries was a state prisoner prior to the occurrence which led to his conviction in this cause and had been paroled in the Mobile County, Alabama area. . . . DeFries failed to report as required and moved to the Calhoun County area without authorization from the Alabama Board of Pardons and Paroles. When the defendant was charged in this cause he was returned to the State penal system to complete that sentence. He was brought to the Calhoun County jail for arraignment and appointment of counsel. The defendant was arraigned in open court on March 31, 1989, at which time the defendant declined appointment of counsel. Trial was set for May 8, 1989. The defendant was in the State penal system until November 30, 1988, at which time the Court's order to transport the prisoner to Calhoun County was executed. After the defendant was arraigned, the Court addressed his motions for a more definite statement and to compel disclosure of the State's evidence. The Court was ready to transport the defendant back into the State penal system until his trial in May, but the defendant expressed the need and desire to remain in the Calhoun County Jail pending trial so that he could converse with family members in this area, conduct discovery and converse with witnesses via his access to the telephone in the jail. The Court agreed to let the defendant remain in the local jail to accomplish these purposes, particularly in light of his refusal to accept appointed counsel.
 "The defendant now contends that he was deprived of access to law books or materials. The defendant would have had ready access to the law libraries and clerks in the state's penitentiaries. It appears the defendant wishes to place the Court in a 'catch twenty-two.' Leave him in the county jail with no access to law books or leave him in the state penal system without ready access to local witnesses. The defendant made an election to remain in the county jail and never requested any legal materials from the undersigned throughout [the] trial." Clerk's Record 109-11.
The circuit court's order reaches the same conclusion as that reached by the court in Myron v. State, 248 Ga. 120,281 S.E.2d 600 (1981), cert. denied, 454 U.S. 1154, 102 S.Ct. 1025,71 L.Ed.2d 310 (1982) (citation omitted). There, finding a similar *Page 748 
argument to be without merit, the Georgia Supreme Court observed that "[t]he defendant knew that the facilities at the county jail were limited at the time he made the choice to represent himself and on several occasions thereafter when he reiterated his choice of self-representation." 248 Ga. at 121,281 S.E.2d at 603.
The trial court's finding that the appellant's post-trial complaints appear to have been attempts to manipulate the legal system is supported by the record.
 III
Piedmont Police Sgt. Bill Fann, the investigating officer in this case, sat at the counsel table with the assistant district attorney throughout the trial but was never called as a State's witness. Then the appellant called Sgt. Fann as a defense witness. The appellant asked the officer whether he had prepared a report in connection with the charges made in the instant case. Sergeant Fann replied that he had made such a report. The appellant's claim that he was entitled to see Sgt. Fann's report or to have it included in the record for the court's inspection is completely without merit.
When a police officer testifies for the State and the defense elicits, on cross-examination, the fact that the officer has prepared a report concerning the subject matter of his testimony, the defense is entitled to have the trial court conduct an in camera inspection of the report. See Ex partePate, 415 So.2d 1140, 1144 (Ala. 1981); Bogan v. State,529 So.2d 1029, 1031 (Ala.Cr.App. 1988). The court should make a two-fold determination, namely: whether the report differs in any material respect from the officer's testimony, and whether production of the report is necessary to ensure the fundamental fairness of the accused's trial. Ex parte Pate,415 So.2d at 1144-45. See also Johnson v. State, 555 So.2d 818, 822
(Ala.Cr.App. 1989), affirmed on return to remand,576 So.2d 1279 (Ala.Cr.App. 1990), reversed on related grounds,576 So.2d 1281 (Ala. 1991); Duncan v. State, 587 So.2d 1260, 1267
(Ala.Cr.App. 1991), affirmed on return to remand,587 So.2d 1264 (Ala.Cr.App. 1991); Bennett v. State, 584 So.2d 869, 871
(Ala.Cr.App. 1990).
The purpose of the rule established in Ex parte Pate is to enable the defense to impeach a State's witness with a prior inconsistent statement. See Annot., Right of Defendant inCriminal Case to Inspection of Statement of Prosecution'sWitness for Purposes of Cross-Examination or Impeachment, 7 A.L.R.3d 181 (1966), cited in Pate, 415 So.2d at 1143. A statement obtained under Ex parte Pate "may be used by a defendant only for impeachment purposes. See Palermo v. UnitedStates, 360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287
(1959)." Johnson v. State, 555 So.2d at 821 (emphasis added).
It is axiomatic that a party may not impeach his own witness.Walker v. State, 416 So.2d 1083, 1090-91 (Ala.Cr.App. 1982); C. Gamble, McElroy's Alabama Evidence § 165.01(6) (4th ed. 1991). The accused may not elicit from his own witness testimony that the witness has made a prior statement for the avowed purpose of impeaching the witness with the inconsistent statement.Gandy v. State, 81 Ala. 68, 72, 1 So. 35, 36 (1887).
 IV
The appellant maintains that the circuit court erred by denying his pre-trial motion to have the prosecution "disclose past and present relationships, associations, and ties between the prosecuting attorney and prospective jurors" scheduled to be on the venire for his trial. R. 67. We do not agree.
When the judge denied the motion, he explained that the appellant would have the opportunity to inquire into such relationships during the voir dire examination. The court gave the appellant examples of questions to elicit the information he sought and suggested that the appellant "prepare ahead of time" a list of voir dire questions. R. 69-70.
The appellant contends that he is entitled to a new trial because at least three jurors failed to respond truthfully to his voir dire *Page 749 
question, "Are any of you acquainted with or do you know anyone who is employed by the District Attorney's office?" Clerk's Record 60.
In its order denying the appellant's motion for new trial, the trial court found that the appellant had not asked such a question, Clerk's Record 113, and the record supports this finding. It shows that the following occurred at the completion of the State's voir dire:
 "THE COURT: Opportunity now for voir dire examination by the defendant, Mr. DeFries.
 "THE DEFENDANT: I want to thank all of you for coming here to court today. And as the prosecutor here has pretty well covered most of the questions that I was concerned about, too. And most of the time were asking you questions that I don't feel are going to be pertinent to us choosing a jury. All of you look like you'd be honest and truthful citizens here in Calhoun County. I'm agreeable to accept that.
 "One question I do have is, did anyone here ask during the course of the jury selection here to be removed for some reason, hearing or whatever, by the Judge? I don't want to know the reason, I just want to know if anyone asked to be excused from the jury.
 "Thank you. I'm satisfied with everything, Your Honor." Supplemental Record at 19-20.
 V
The appellant complains that he was not furnished with a jury list prior to the morning of trial as the court had promised he would be. This issue has not been preserved for review. Irregularities in serving a copy of the jury list on the accused are waived if not objected to "before entering upon the trial." Gaston v. State, 179 Ala. 1, 5, 60 So. 805, 807 (1912).
 VI
The appellant asserts that the trial court failed to follow statutory procedure in summoning, identifying, organizing, and empaneling the jury in his case. He claims that he has been prejudiced in the presentation of his argument on this issue by the failure of the court reporter to take stenographic notes of those portions of his trial.
The appellant failed to preserve these issues for review. At trial, he made no objection to the system by which the circuit court identified and organized the jury, nor did he ask that the court reporter be required to record those proceedings.
"Irregularity in the organization or impaneling of a petit jury is waived, if objection because of it is not made before entering on the trial. . . . It is not necessary, therefore, to decide whether, in the organization of the petit jury, in the events which had occurred, there was regularity or irregularity." Howard v. State, 108 Ala. 571, 573-74,18 So. 813, 814 (1895). See Steele v. State, 83 Ala. 20, 3 So. 547
(1888) (alleged error in failing to inform accused of names of jurors excused from service by trial court waived by failure to object); McGary v. City of Birmingham, 57 Ala. App. 212,326 So.2d 773 (1976) (fact that drawing of prospective jurors' names was done by bailiff in jury room, rather than by trial judge in open court not ground for reversal when objection was general and untimely); Hall v. State, 18 Ala. App. 407,92 So. 527, cert. denied, 207 Ala. 711, 92 So. 920 (1922) (irregularity in proving veniremember exempt from jury duty waived by failure to object); Huguley v. State, 15 Ala. App. 189,72 So. 764 (1916) (alleged defect in failing to shake box from which names of jurors for special venire were drawn waived by accused's failure to object).
In May 1989, when the appellant was tried, the court reporter was not required to record the organization and empaneling of the jury. See Ala. Code 1975, § 12-17-275. Even the new Alabama Rules of Criminal Procedure (effective January 1, 1991), which direct the court reporter to "take full stenographic notes of [the] voir dire of the jury," see Rule 19.4, A.R.Crim. P., do not required at preliminary proceedings — identifying the jurors and dividing them into panels — be reported. *Page 750 
 VII
The appellant claims that the method of selecting his jury violated the Equal Protection Clause of the Fourteenth Amendment, as interpreted in Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Prior to trial, the appellant filed a "motion to quash the petit jury panel" and a "motion to challenge the composition of the petit jury." R. 104. At trial, he argued that "blacks have been systematically excluded from the jury panel, that the jury commission failed to select a fair cross section of the community by failing to include a fair proportion of blacks to serve on the jury," R. 102, and that "prior jury rolls of this county also reveal a history and a pattern of intentions that are discriminatory in the systematic exclusion of blacks," R. 105.
This is a Sixth Amendment fair cross-section claim, not a Fourteenth Amendment equal protection claim. See Holland v.Illinois, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).Batson does not apply to Sixth Amendment claims. Id. In order to establish a Sixth Amendment violation, the accused has the burden of proving a systematic exclusion of blacks resulting in their under-representation on the jury rolls. See Duren v.Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979);Robinson v. State, 560 So.2d 1130, 1132 (Ala.Cr.App. 1989).
The appellant presented no evidence supporting any such exclusion. In fact, he stated that "because of [his] confinement in the county jail, [he was] not . . . able to give any supporting documents" on this argument. R. 105. Thus, the appellant demonstrated no violation of the Sixth Amendment fair cross-section requirement. See Brundage v. State,585 So.2d 238, 239 (Ala.Cr.App. 1991); Childs v. State, 574 So.2d 1023,1024 (Ala.Cr.App. 1990); White v. State, 587 So.2d 1218, 1221
(Ala.Cr.App. 1990), affirmed, 587 So.2d 1236 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).
The appellant's Fourteenth Amendment (Batson) challenge to the jury selection process was untimely. To be timely, a Batson
objection must be interposed before the jury is empaneled and sworn. Bell v. State, 535 So.2d 210, 212 (Ala. 1988); Saffoldv. State, 536 So.2d 970, 971 (Ala.Cr.App. 1988). The appellant raised Batson for the first time during oral argument on his motion and amended motion for new trial:
 "THE DEFENDANT: . . . I would like to ask [the prosecutor] why she struck blacks off the jury during our strike list. Of the two that she struck off, the reason why she struck them. I want to ask these questions under Batson v. Kentucky. . . .
"THE COURT: Any response, [prosecutor]?
 "[ASSISTANT DISTRICT ATTORNEY]: . . . . As to any Batson motions, that has not been filed with the Court and the State is not prepared at this point to go into that. We would be happy to at any later time. But that motion has not been filed. . . .
 "THE COURT: . . . It's noted for the record earlier that the Defendant in this case, Mr. DeFries, is a white male, a white Caucasian. I know of no guarantees by the Supreme Court rul[ing] under Batson vs. Kentucky or any other case that would guarantee to him a jury comprised to some extent of people of some other race.
 "THE DEFENDANT: Your Honor, I would like for the record to show also in that particular motion that I had asked the Court that blacks be allowed to serve on my jury. That they are a part of the Calhoun County community.
 "THE COURT: Yes, sir. And I noted on the record at that time in jury selection when you have made this point before and it's a part of the record that will be reviewed if the case is appealed. But you, in fact, struck two black jurors. The State struck two black potential jurors." R. 778-80.
In Ex parte Williams, 571 So.2d 987 (Ala. 1990), our Supreme Court held that *Page 751 
when the State fails to object on procedural grounds to the untimeliness of a Batson motion, and the trial court proceeds to the merits of the claim, ruling erroneously that no Batson
violation has been shown, an appellate court may not uphold the result by relying on the prior procedural default.
Here, the prosecutor's response to the appellant'sBatson claim was ambiguous. It is not clear whether her statement that no Batson motion had been "filed with the Court" referred to the appellant's trial default or to his failure to present the Batson issue in his written motion for new trial. Therefore, we cannot be sure, as the court in Ex parte Williams
was, that the State failed to object on procedural grounds to the untimeliness of the motion. Nevertheless, the trial court reached the merits of the issue by ruling that the appellant, a white, had no standing to assert a Batson claim, and that the appellant struck the same number of blacks as the State.
While the first part of this ruling is clearly erroneous,[1] see Powers v. Ohio, ___ U.S. ___, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991); Ex parte Bird, 594 So.2d 676 (Ala. 1991) (a white criminal defendant has standing under the Equal Protection Clause of the Fourteenth Amendment to challenge the prosecution's use of peremptory strikes of black veniremembers), the second part — which we construe as a finding that the appellant failed to present a prima facie case — is not clearly erroneous.
Thus, even if we ignored the appellant's procedural default, we would uphold the denial of his Batson claim on the ground that he failed to meet his burden of showing, prima facie, that the State engaged in purposeful racial discrimination. See Lowev. State, 548 So.2d 1086 (Ala.Cr.App.), cert. denied,548 So.2d 1087 (Ala. 1989); Robinson v. State, 545 So.2d 828, 833
(Ala.Cr.App. 1989).
There were 4 black potential jurors on the 36-member panel. Each party used 2 of its 12 strikes to eliminate blacks. No blacks served on the jury. When the trial court reminded the appellant that he, like the State, had struck 2 black jurors, the appellant replied that he wanted blacks on his jury but he was so bewildered by the striking process that he did not realize he had struck any black veniremembers.
The trial court may have disbelieved that explanation in light of the fact that the appellant answered "yes" when the court asked, "Mr. DeFries, is that your jury . . .?" R. 139. Nevertheless, whether the appellant was motivated by a racially discriminatory intent is not in question. The issue is whether the appellant made a prima facie showing that theState was so motivated.
When both parties engage in the same outward conduct, the defendant does not establish that the State's inward motivation was "bad" by arguing that his own was "good." The defendant has the burden of going forward with evidence implying thepresence of a discriminatory intent on the part of the State, not the absence of a discriminatory intent on his own part.
"The removal of blacks by the use of peremptory challenges does not, by itself, raise an inference of racial discrimination." Swain v. State 504 So.2d 347, 351 (Ala.Cr.App. 1986). See Batson, 476 U.S. at 101, 106 S.Ct at 1726 (White, J., concurring) ("not unconstitutional, without more, to strike one or more blacks from the jury"). Instead, the appellant was required to show that the State's removal of 2 black jurors "and any other relevant circumstances raise[d] an inference that the prosecutor used [the process of peremptory strikes] to exclude the veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96, 106 S.Ct. at 1723 (emphasis added). The appellant did not produce any such evidence. He presented "no evidence of a pattern of strikes against blacks, past conduct of the prosecutor in exercising strikes, or any characteristics of the venirepersons excluded from jury service." Finch v. State, 518 So.2d 864, 866 (Ala.Cr.App. 1987). He therefore failed to make a prima facie case of discrimination *Page 752 
under Batson and Ex parte Branch, 526 So.2d 609 (Ala. 1987).
 VIII
The appellant moved for change of venue, alleging that he could not obtain a fair trial in Calhoun County because the circuit court had denied all of his pre-trial motions and had, in effect, "judged [him] guilty . . . before trial." Brief of Appellant at 83. This allegation amounts to nothing more than the appellant's personal opinion and was insufficient to entitle him to relief.
"The burden is on the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected in order to achieve the right to a change of venue." Maund v. State,254 Ala. 452, 457, 48 So.2d 553, 557 (1950). "[T]he mere belief of the appellant . . . that he cannot receive an impartial trial is insufficient to entitle him to a change of venue." Payne v.State, 48 Ala. App. 401, 406, 265 So.2d 185, 189, cert. denied,288 Ala. 748, 265 So.2d 192, cert. denied, 409 U.S. 1079,93 S.Ct. 703, 34 L.Ed.2d 669 (1972).
 "A change of venue is granted only when it is clearly shown that a fair and impartial trial may not be had in the county in which the indictment is found. Facts and circumstances rendering such a trial improbable must appear. The mere belief of the party applying . . . that such trial cannot be had, will not suffice. The affidavits consist largely in the mere expression of the opinion of the parties making them, and no distinct, tangible facts are stated, which, in our opinion, would have justified the circuit court in granting the application."
Jackson v. State, 104 Ala. 1, 4, 16 So. 523, 524 (1894).
 IX
The appellant insists that the trial court's written order denying his motion for new trial should be expunged from the record because it was issued beyond the 60-day time limit of Rule 13(d), A.R.Crim. P.Temp., and was therefore a nullity.
Rule 13(d), in effect at the time of the appellant's motion, provided:
 "No motion for new trial . . . shall remain pending in the trial court for more than sixty (60) days, except as provided in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day. Provided, however, that with the express consent of the district attorney and the defendant or his attorney, which consent shall appear in the record, the motion may be carried past the sixtieth day to a date certain; if not ruled upon by the trial court as of the date to which the motion is continued, the motion is deemed denied as of that date, unless it has been continued again as provided in this section. The motion may be continued from time to time as provided in this section."
The following sequence of events is relevant:
May 25 — The appellant filed his motion for new trial. Sixty-day time limit of Rule 13(d) began to run.
June 21 — The appellant filed an amended motion for new trial.
July 5 — Hearing held on motion for new trial.
July 24 — Sixty-day time limit for ruling on motion expired.
August 7 — The appellant filed notice of appeal.
August 28 — Trial court issued a written order denying the motion for new trial.
September 18 — The appellant filed a motion to vacate the court's written order.
Former Rule 13, A.R.Crim. P.Temp., was modeled after and corresponded to Rule 59, A.R.Civ.P. Pickron v. State,475 So.2d 599, 600 (Ala. 1985). It is proper to look to case law on Rule 59.1 to interpret Rule 13(d). Hooper v. State, 523 So.2d 469,472 (Ala.Cr.App. 1986). Like Rule 59.1, Rule 13(d) required the "express consent" of the parties to an extension of the time period for ruling on a post-trial motion. Id. See also Harrisonv. Alabama Power Co., 371 So.2d 19 (Ala. 1979). Agreement to a hearing on the post-trial *Page 753 
motion does not satisfy the requirement of "express consent."Harrison, 371 So.2d at 20-21; Box v. Box, 536 So.2d 83, 84
(Ala.Civ.App. 1988).
In this case, the 60-day time period of Rule 13(d) began to run on May 25, when the appellant's motion for new trial was filed. See Box v. Box, 536 So.2d at 83. Compare Rule 24.4, A.R.Crim.P. (time begins to run at pronouncement of sentence). The 60-day period expired on July 24. Therefore, the appellant is correct that the trial court's decree issued on August 28 was "a nullity and . . . of no force and effect." Box v. Box,536 So.2d at 83; Harrison v. Alabama Power Co.,371 So.2d at 21.
Although the same result would obtain whether the appellant's motion was denied by operation of law on July 24, or by written order on August 28, the appellant asserts that he has been prejudiced by certain factual findings included in the court's written order that are not contained in the record on appeal. We assume that the appellant is referring to those facts regarding the trial court's method of summoning, organizing, and empaneling the jury, which are not included in the court reporter's transcript.
As noted in Part VI supra, however, no factual findings were necessary to uphold the denial of the appellant's claims on those issues. We resolved them against the appellant because he did not preserve them for review. With the exception of the trial court's factual findings relating to Part VI, all other factual findings contained in the trial court's written order denying the appellant's motion for new trial are fully supported by the record. Therefore, the appellant has not been prejudiced by the presence in the record of the void written order denying his motion for new trial.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The ruling was correct at the time of the trial judge's decision which was prior to the cases of Powers and Bird. SeeGordon v. State, 587 So.2d 427 (Ala.Cr.App. 1990).