**Lemuel ROSENDAUL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 57A04–0607–CR–405.**

Court of Appeals of Indiana.

April 24, 2007.

Daniel M. Grove, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Lemuel Rosendaul appeals his conviction for theft as a Class D felony. Specifically, he argues that the trial court violated his due process rights by interrogating him during his bench trial about some of the filings he had signed in this case. Because the trial court's interrogation of Rosendaul aided the court in its fact-finding responsibilities and gave Rosendaul an opportunity to explain these filings, Rosendaul cannot establish a due process violation. We therefore affirm the trial court.

### Facts and Procedural History

In spring 2002, Rosendaul moved in with Jennifer Dilley in her Kendallville, Indiana, apartment. Dilley forced Rosendaul to move out of her apartment at the beginning of October 2002 because he was not paying his share of the rent and bills. Shortly thereafter, Dilley discovered that money was missing from her bank account. Dilley obtained a statement and noticed that there were several ATM withdrawals that she did not authorize. As a result, Dilley notified the Noble County Sheriff's Department and informed them that she suspected Rosendaul.

Thereafter, Rosendaul delivered a handwritten letter "[t]o the Deputy in charge of the Jennifer M. Dilley case"—dated "Oct. 21, 02"—to the Noble County Sheriff's Department in which he admitted using Dilley's ATM card because he "was angry and was just trying to get even with her...." [1] Ex. 3. On December 14, 2002, Detective Shawn Dunafin from the Noble County Sheriff's Department interviewed Rosendaul, who at the time was incarcerated at the DeKalb County Jail. After waiving his *Miranda* rights, Rosendaul gave a statement in which he again admitted using Dilley's ATM card but this time claimed to have her permission to do so. Ex. 2.

In September 2003, the State charged Rosendaul with Theft as a Class D felony [2] for knowingly or intentionally exerting unauthorized control over Dilley's ATM card with intent to deprive her of any part of its value or use. Rosendaul waived his right to a jury trial, and a bench trial was held in May 2006. At the bench trial, Rosendaul testified in his own defense and denied writing Exhibit 3, the confession letter dated "Oct. 21, 02." Rosendaul explained that he "always" writes dates in "military style," meaning that he would have written the date "21 October 02" Tr. p. 33. As such, Rosendaul speculated that someone else must have written the October 21, 2002, confession letter. Again, Rosendaul claimed that he had permission to use Dilley's ATM card. After the State cross-examined Rosendaul, the following discussion occurred between the trial court, Rosendaul, and Rosendaul's attorney:

COURT: Let me ask[ ] you Mr. Rosendaul, were you in the military?

A: Yes, I was.

COURT: What branch?

A: United States Navy.

COURT: How many years?

---

1. This letter was received at the Noble County Sheriff's Department on October 28, 2002.

2. Ind.Code § 35–43–4–2(a).

A: I got discharged right from boot camp.

COURT: So you weren't there even a year?

A: No, I wasn't.

COURT: Up at Great Lakes?

A: Yes, I did.

COURT: Is that where you learned to use[ ] the military form of dating?

A: Yes, I was also starting to learn the alphabet too, how it is used, and the ranks.

COURT: I'm sorry.

A: We were drilled in for 9 weeks on how to write, how to pronounce the correct numbers, your alphabet by military, also your chain of command.

COURT: I am sure you learned all of that, but let's deal with the dates. So, after you left the military you continued to use that form of dating in your civilian life?

A: Yes.

COURT: It just appealed to you?

A: It made more sense and a lot easier.

COURT: Okay, so you always used it, is that right?

A: Yes, I still do to this day.

COURT: So, since that time, when were you discharged?

A: Uh, November 5th or 6th of '97.

COURT: And since November of '97 whenever you wrote a date you always did it military style?

A: Yes.

COURT: You never made an exception?

A: No, I refuse to.

COURT: Why?

A: Because to me right now the month, day and year, you have to go back and look at it. When you write the date of the month, then the month and then the year it is a lot easier to distinguish what is going on.

COURT: Okay.

A: That is the way I keep my records at home.

COURT: I think I understand. In the course of the history of this case did you write letters to me? Letters to the Court?

A: I may have wrote [sic] motions to the Court.

COURT: Motions, letters, various things. Did you write one to me April 28th of last year?

A: I don't recall, but I think I did. I think.

COURT: Okay. Would you know it if you saw it?

A: I would know it if I saw it.

COURT: Just wait a minute. Okay. You should have copies in your file I presume.

H. HANSON: What was the date, Your Honor? April 28th. Let me ask[ ] you also, I have a document that is dated or filed October 18th of '04, it is a Waiver of Rights and it appears to have your signature on it. Do you remember that?

A: No, I don't recall.

COURT: Okay. I will show you that. Okay, what I would like is counsel and Mr. Rosendaul to come forward because I have some questions for him and it will just be easier if he is up here.

H. HANSON: Did you say Mr. Rosendaul too?

COURT: Yes, please. Do you remember writing, does this look like the letter you wrote me?

A: Yeah. I do recall that letter.

COURT: How is it date[d]?

A: It is dated the April 28th of 2005.

COURT: Is that military?

A: No.

COURT: Let's move on.

A: I was also helped by mother too.

COURT: Okay, that's fair enough. Do you remember this Waiver of Rights? Is that your signature on here?

A: That is my signature.

COURT: How is it dated?

H. HANSON: I wrote that.

COURT: Okay. Mr. Hanson did that. Okay. How about over here? How is that dated?

A: That is not my handwriting.

COURT: Okay. Let's see, is that your signature?

A: That is my handwriting.

COURT: So, you didn't put that date?

H. HANSON: That is mine.

A: I did not.

COURT: Okay. I wanted to clear that up. I am glad you could help me on it. Okay. Is that your signature?

A: That looks like my signature.

COURT: Did you write that letter?

A: I don't recall the letter.

COURT: How is it dated?

A: It is dated February 6, 2004.

COURT: Not military?

A: It is not my handwriting either.

COURT: Okay. You think somebody else is writing letters [o]n your behalf?

A: It's happened in the past.

COURT: Here is another letter that purports to be from you, do you remember that?

A: No.

COURT: How is that one dated?

A: -unintelligible-

COURT: Okay. Do you recall writing letters to me or did someone I don't recall writing letters in that time peri-od, no. Let's take a look at this one. Do you remember that?

A: No, I don't.

COURT: And, how is that dated?

A: It is written September 29 of '03.

COURT: Is that your signature?

A: It don't [sic] look like it.

COURT: Okay. Let's take a look at this one. Does that look like your writing?

A: Not really.

COURT: Here is the signature. Is that your signature?

A: That is not my signature.

COURT: So, someone else is writing all these letters?

A: That letter right there is not my signature, I can vouch for that one.

COURT: Okay. So, you are suggesting that some[one] else wrote at least half a dozen letters to me and forged and said they were from you?

A: Every letter I have written to you has my name printed below the signature.

COURT: Okay. Thank you. Okay. Are there any other questions for Mr. Rosendaul?

H. HANSON: No, sir.

Tr. p. 38–44. At no point did Rosendaul's attorney object to the trial court's interrogation of Rosendaul. Following closing arguments, the trial court stated:

This is obviously very simply put, a question of credibility, uh, the classic he said she said. And, he said that he had permission and she says that no, that is absolutely not the case. So, one has to look at that indicia of truthfulness and credibility because this really involves just that, the credibility of Ms. Dilley and Mr. Rosendaul. Ms. Dilley's statement has been clear and unequivocal without any, for lack of a better term,

scratch the back of your head problems. Mr. Rosendaul has caused a gaping wound on the back of my head and I find it almost incredible for him to tell me that I have a file full of letters the signatures on which are identical to the signatures that he says are his on other documents and he didn't write them. He tells us he only writes in military terms and at least five examples of documents which I believe were written by him and are not dated in military form. . . .

*Id.* at 53. As such, the trial court found Rosendaul guilty as charged and sentenced him to two and one-half years in the Indiana Department of Correction. Rosendaul now appeals.[3]

### Discussion and Decision

 Rosendaul raises one issue on appeal. He contends that his "Fourteenth Amendment Right to due process was violated because the trial court, by asking [him] questions during the trial and essentially cross-examining him, abandoned its role as a neutral and detached fact finder and assumed the role of an advocate." Appellant's Br. p. 1. Although cited by neither party, Indiana Evidence Rule 614 controls this case. Specifically, Evidence Rule 614(b) provides, "The court may interrogate witnesses, whether called by itself or by a party." The purpose of this rule is to aid the court and the jury in its fact-finding responsibilities. *See Trotter v. State,* 733 N.E.2d 527, 532 (Ind.Ct.App. 2000) (addressing Indiana Evidence Rule 614(b)), *reh'g denied, trans. denied; see also Griffin v. State,* 698 N.E.2d 1261, 1265 (Ind.Ct.App.1998) ("The purpose of allowing the judge to question witnesses is to permit the court to develop the truth or

obtain facts which may have been overlooked by the parties."), *trans. denied.* Subsection (c) goes on to provide, "Objections . . . to interrogation by [the court] may be made at the time or at the next available opportunity when the jury is not present." Ind. Evidence Rule 614(c). This case involved a bench trial, so Rosendaul was required to lodge a contemporaneous objection to the trial court's interrogation of him, which he did not do. Therefore, Rosendaul must establish fundamental error on appeal. *See Ware v. State,* 560 N.E.2d 536, 538–39 (Ind.Ct.App. 1990), *trans. denied.* The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State,* 849 N.E.2d 578, 587 (Ind.2006).

 A trial before an impartial judge is an essential element of due process. *Jones v. State,* 847 N.E.2d 190, 198 (Ind. Ct.App.2006), *reh'g denied, trans. denied.* Indeed, if a judge is biased, fundamental error exists. *See Ware,* 560 N.E.2d at 539. However, interrogation of witnesses alone does not make a judge biased. Moreover, a judge's discretion to question witnesses is greater in bench trials than in trials before juries. *Jones,* 847 N.E.2d at 198; *Ware,* 560 N.E.2d at 539. This is because the opportunity to influence the jury is not present in a bench trial. In a bench trial, the judge in his or her discretion may ask questions of a witness "to aid in the fact-finding process as long as it is done in an impartial manner and the defendant is not prejudiced." *Jones,* 847 N.E.2d at 198

---

3. We pause to note several inaccuracies in the State's Statement of the Facts, including that Rosendaul wrote the October 21, 2002, confession letter *after* giving a statement to Detective Dunafin at the DeKalb County Jail in which he claimed to have Dilley's permission to use her ATM card.

(quotation omitted). Hence, we must look at the judge's questions to determine whether the interrogation aids in the fact-finding process or reveals a bias of the judge.

■ Here, after the State cross-examined Rosendaul, the trial court asked him a series of questions related to his use of "military style" dating. After confirming with Rosendaul that he "always" uses "military style" dating, the trial court confronted him with several filings in this case in which Rosendaul signed the filings but did not use "military style" dating. However, on appeal Rosendaul claims that the filings "the trial court used to cross-examine him were not admitted into evidence but were merely part of the pleadings in the trial court's file." Appellant's Br. p. 10; *see also* Appellant's Reply Br. p. 2 ("The trial court was effectively using its knowledge of matters extraneous to the evidence presented during the trial to support its finding of guilt.").

■ A trial court may take judicial notice of a fact, regardless of whether a party requested it. Ind. Evidence Rule 201(a), (c). A judicially-noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Id.* at (a). A trial court may take judicial notice of the pleadings and filings in the very case that is being tried. *Sanders v. State*, 782 N.E.2d 1036, 1038 (Ind.Ct.App. 2003) (citing *Owen v. State*, 272 Ind. 122, 129, 396 N.E.2d 376, 381 (1979)). "The court may take judicial notice of a fact, or of the contents of the pleadings and filings in the case before it, and a rebuttable presumption arises, which requires the defendant to come forward with evidence to dispute the presumption." *Id.*

It is apparent here that the trial court was taking judicial notice of the filings that Rosendaul had signed in this case. And the court properly took notice of how these filings were dated. *See id.* (holding that trial court properly took judicial notice of defendant's letter in the trial court's file in which he claimed to have worked somewhere for a certain amount of time). Because the trial court took judicial notice of these filings, which contradicted Rosendaul's testimony that he "always" uses "military style" dating, the court's interrogation of Rosendaul gave him an opportunity to explain. This, in turn, aided the trial court in ascertaining the truth. In fact, the court's interrogation of Rosendaul revealed that Rosendaul's attorney dated one of the filings and Rosendaul's mother may have dated another one. We cannot say that this interrogation revealed any bias on the part of the trial court.

The only other option for the trial court would have been to not question Rosendaul about the filings he had signed, thereby giving him no opportunity to explain, and then find him not credible as a result. Here, Rosendaul was given an opportunity to deny that he authored these filings. Given that this was a bench trial, Rosendaul cannot establish fundamental error in the trial court's interrogation of him because it aided the court in its fact-finding responsibilities, was done in an impartial manner, and gave him an opportunity to explain why the filings he had signed were not dated in "military style." We therefore affirm the trial court.

Affirmed.

BAILEY, J., and BARNES, J., concur.