F. Scott BROWN, Total Business Solutions, Inc., and Brown Financial Company, Inc., d/b/a Total Business Solutions, Appellants–Defendants/Counterclaimants,

v.

Michael P. JONES, Appellee–Plaintiff/Counterdefendant.

No. 18A02–0306–CV–469.

Court of Appeals of Indiana.

March 18, 2004.

David W. Stone IV, Stone Law Office & Legal Research, Anderson, IN, Donald H. Dunnuck, Dunnuck & Associates, Muncie, IN, Attorneys for Appellants.

Eric N. Allen, Kevin G. Harvey, Allen Wellman McNew, Greenfield, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants/Defendants/Counterclaimants F. Scott Brown ("Brown"), Total Business Solutions, Inc. and Brown Financial Company, Inc., d/b/a Total Business Solutions, appeal a jury verdict in favor of Appellee/Plaintiff/Counterdefendant Michael P. Jones ("Jones") on his conversion claim.[1] We reverse and remand.

### Issue

Brown presents two issues for review, the following of which we find dispositive:

Whether the trial court invaded the province of the jury by reading Plaintiff's Exhibit I—Findings of Fact, Conclusions of Law and Judgment dissolving the corporations owned by Brown

and Jones—and instructing the jury that the facts contained therein were judicially noticed and conclusive.

### Facts and Procedural History

In April of 1997, Brown, Jones and Doug Poling ("Poling") incorporated Total Business Solutions, Inc. ("TBS"), an employee leasing business. Initially, Brown owned 50% of the corporation's stock, and Jones and Poling each owned 25%. Brown was also the owner of Brown Financial Company, Inc. ("BFC"), which had been in business since 1991. The incorporators of TBS decided that TBS should be operated as part of BFC, in order to take advantage of the workers compensation insurance rates and unemployment compensation rates available to BFC as a long-standing business.

Jones, a regional sales director for AFLAC insurance, also became an employee of TBS during late 1997 or early 1998, with responsibilities in sales and marketing. Jones was to receive a $6,000.00 monthly salary from TBS, but agreed to tender to TBS his commissions from the sales of AFLAC policies. In February 1999, Brown informed Jones that he would receive a bi-weekly check of only $2,000.00, and that he would receive a 1099 form instead of a W–2 form for tax purposes. On July 28, 1999, Jones purchased Poling's stock. Thereafter, Brown informed Jones that he would receive no salary, but would receive monthly distributions as an equal owner of TBS.

Jones requested access to the financial records of TBS, without success. On March 27, 2000, Jones delivered to Brown a letter drafted by Jones' attorney demanding access to TBS documents. Brown responded by demanding that Jones leave the business premises. Later

1. Brown does not appeal the negative verdict on his fraud claim.

that day, Jones returned to find that he had been locked out.

On April 24, 2000, Jones filed a complaint against Brown, TBS and BFC (hereinafter collectively referred to as "Brown"), seeking conversion damages, inspection of corporate records, appointment of a receiver and corporate dissolution. The complaint alleged that the assets of TBS and BFC were improperly commingled, the shareholders were deadlocked, and that Brown failed to properly account for the income and assets of TBS while receiving excess distributions to himself. Brown counterclaimed, alleging that Jones breached employment and expense contracts and committed fraud and conversion.

On September 12, 2000, the trial court held a hearing on the request for the appointment of a receiver. On October 3, 2000, the trial court entered "Findings of Fact, Conclusions of Law and Judgment Dissolving Corporations and Appointing Receiver." App. 86. On November 1, 2001, the receiver filed a final accounting, which was approved by the trial court on January 8, 2002.

On February 12, 2002, Brown filed a motion for summary judgment on the remaining claims of Jones' complaint, which motion was denied by the trial court on April 17, 2002. On September 9, 2002, Jones filed a motion for summary judgment as to all claims in Brown's counterclaim. On November 21, 2002, following a hearing, the trial court granted summary judgment to Jones on all of Brown's claims except the fraud claim.

On February 5, 2003, trial upon the conversion and fraud claims of the complaint and counterclaim commenced. On February 7, 2003, the jury returned a verdict in favor of Jones upon his conversion claim in the amount of $132,000.00. The jury found against Brown on the fraud counterclaim. This appeal ensued.

## Discussion and Decision

*Conclusiveness of Plaintiff's Exhibit 1*

■ Article I Section 20 of the Indiana Constitution provides as follows: "In all civil cases, the right of trial by jury shall remain inviolate." Brown contends that the trial court "effectively nullified that right," Appellant's Br. at 13, by reading to the jury, who was charged with determination of the fraud and conversion claims the entire text of Plaintiff's Exhibit 1, Findings of Fact, Conclusions of Law and Judgment Dissolving Corporations and Appointing Receiver, and by instructing the jury as follows:

> The Court has taken judicial notice of its Findings of Fact, Conclusions of Law, and Judgment Dissolving Corporations and Appointing Receiver, which were issued by the Court in the case on October 3, 2000. This means that, in your deliberations, you must accept the facts contained in those Findings, which have been offered into evidence, as having been conclusively proved.

(Tr. 659–60.) As a threshold matter, we consider whether Brown waived his allegation of error, as Jones contends. At the jury trial, Jones' counsel proffered Plaintiff's Exhibit 1, without objection from Brown, who initially agreed that "the court obviously can take judicial notice of its own records[.]" (Tr. 42.) However, when it became apparent that the trial court intended to read to the jury the findings and conclusions of Exhibit 1 in their entirety, Brown immediately objected that the procedure invaded the province of the jury:

> I object to it being read to the jury because that was a hearing that was for the sole purpose of appointing a receiver and declaring the corporations insolvent. The trier of fact is to determine what

the agreement was between the parties and whether the parties breached the agreement. So, for that reason, I object to the Court, the Court's decisions on the—the reasoning behind the Court's decision of appointment of a receiver and the liquidation of the corporation, and the reason is that there's evidence that the Court did not have presented before it that it will have—the jury will have today. So, I would object to the Court's Order of that date preempting the province of the jury.

(Tr. 42–43.) As such, Brown's contention that the trial court invaded the province of the jury was adequately preserved for appellate review.

■ The findings and conclusions of Plaintiff's Exhibit 1 reveal the bases for the trial court's decision that the business of TBS could not be conducted advantageously to the deadlocked shareholders and thus TBS should be dissolved. However, the findings include several statements indicating that the trial court found Brown's conduct wrongful and his testimony lacking in credibility.[2] It is these findings, in particular, that Brown finds invasive of the province of the jury in deciding whether Brown committed conversion. In response, Jones contends that a court may take notice of its own records, and every fact incorporated within court records, once final, may be judicially noticed and given conclusive effect in subsequent proceedings between the same parties. This case invokes the principles of both judicial notice and claim preclusion.

■ Indiana Evidence Rule 201 provides in relevant part as follows:

(a) Kinds of Facts. A court may take judicial notice of a fact. A judicially-noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned....

(g) Instructing the Jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Accordingly, a court may take judicial notice of a fact not subject to reasonable dispute. *Sanders v. State*, 782 N.E.2d 1036, 1038 (Ind.Ct.App.2003). Judicial notice excuses the party having the burden of establishing a fact from the necessity of producing formal proof. *Id.* (citing *Hutchinson v. State*, 477 N.E.2d 850, 854 (Ind. 1985)).

---

**2.** For example, Finding of Fact 8 provides in pertinent part: "Brown never issued shares of BFC to Jones and Poling during the year 1997, despite requests to do so. Jones and Poling began expressing dissatisfaction with the arrangement in January of 1998 because they had no access to the company checkbook, because Brown's personal brokerage commissions were being commingled into the same account, and because they were receiving no tax benefits from the losses which had accrued during the first year of operation." (Ex. 1, pg. 3.) Finding of Fact 9 refers to Brown's "appeasement" of Jones and Poling. (*Id.*) Finding of Fact 10 provides in pertinent part: "Any income received by TBS has been deposited into BFC and commingled with income received by BFC from other sources." (Ex. 1, pg. 4.) Finding of Fact 19 includes a footnote, which provides: "Brown retracted this statement during testimony, but has yet to produce any of those documents." (Ex. 1, pg. 8.) Finding 21 provides in pertinent part: "Brown refused to change the nature of the company business or give Jones shares in BFC as promised.... Brown began operating TBS as if he were a sole proprietor." (Ex. 1, pg. 9.)

■ As a general rule, a trial court may not take judicial notice of its own records in another case previously before the court even on a related subject with related parties. *Henderson v. State,* 544 N.E.2d 507, 512 (Ind.1989). However, a trial judge may take judicial notice of the pleadings and filings in the very case that is being tried, and a rebuttable presumption arises, which requires the defendant to come forward with evidence to dispute the presumption. *Sanders,* 782 N.E.2d at 1038 (citing *Owen v. State,* 272 Ind. 122, 129, 396 N.E.2d 376, 381 (1979)). Even so, facts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice. *Id.*

■ Although the trial court and the parties have couched the issue of conclusiveness of the facts contained in the receivership decree in terms of "judicial notice," we are not concerned with "generally known" facts within the purview of Evid. R. 201(a)(1). "The impossibility of reasonable dispute marks such facts, and justifies their acceptance as true without proof." Miller, INDIANA EVIDENCE § 201.103 (2d ed.1995). Alternatively, Evid. R. 201(a)(2) encompasses facts ascertainable from sources that cannot reasonably be questioned, and presumably court records are such sources. *Id.,* § 201.105. Nevertheless, notice of court records is not without limitation. Unless principles of claim preclusion apply, judicial notice should be limited to the fact of the record's existence, rather than to any facts found or alleged within the record of another case. *Id.* (citing *Holloway v. Lockhart,* 813 F.2d 874, 878–79 (8th Cir.1987)).

Here, the scope of the judicial notice goes beyond taking notice of the fact that a dissolution and receivership order was entered; indeed, some of the "noticed" facts are determinative of ultimate facts in the conversion claim. Thus, the critical inquiry is whether the implicit determinations of credibility and wrongdoing within the receivership and dissolution findings are finally determined, or subject to determination by the jury. As such, the parties vigorously contest whether the October 3, 2000 order was a final and binding judgment, not having been appealed. Specifically, Jones contends that all findings of fact in the October 3, 2000 decree are an "unalterable, finally established part of the law of the case." Appellee's Br. at 10.

■ The law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Cha v. Warnick,* 476 N.E.2d 109, 114 (Ind.1985). The law-of-the-case doctrine, which is discretionary, stands for the proposition that:

> [F]acts established at one stage of a proceeding, which were part of an issue on which judgment was entered and appeal taken, are unalterably and finally established as part of the law of the case and may not be relitigated at a subsequent stage.

*Platt v. State,* 664 N.E.2d 357, 361 (Ind.Ct. App.1996) (citations omitted).

■ Similarly, the doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. *Scott v. Scott,* 668 N.E.2d 691, 699 (Ind.Ct.App.1996). The principle of res judicata is divided into two branches: claim preclusion and issue preclusion. *Eichenberger v. Eichenberger,* 743 N.E.2d 370, 374 (Ind.Ct.App.2001). Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion,

also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion or collateral estoppel applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id.*

Nevertheless, the foregoing doctrines are inapplicable here, as there had been, prior to the taking of notice of the receivership decree, no final judgment on the merits as to all claims between all parties, or an appeal thereon.[3] Here, multiple claims were presented in a single complaint, but the proceedings were bifurcated. The action for appointment of a receiver and corporate dissolution was tried to the court, while the allegations of conversion and fraud were reserved for the jury. Indiana Trial Rule 54(B) addresses judgment upon multiple claims or involving multiple parties, and provides in pertinent part as follows:

> When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.

The October 3, 2000 decree was not accompanied by an express determination by the trial court that there was no just reason for delay. As such, it was not final. It was, according to T.R. 54(B) "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Brown is not, because of failure to initiate an appeal within thirty days after October 3, 2000, prohibited from challenging the factual determinations within the decree, rendering them "unalterable" and "final" as Jones contends.

The factual statements within the receivership decree were not proper subjects for judicial notice. Several of the findings concerned credibility and acts of wrongdoing, the very issues to be decided by the jury in resolving all evidence presented on the conversion claim. Thus, the purported

---

3. However, we agree with Jones that the appointment of the receiver is now "finally established," because neither party chose to take an appeal of right at the time of appointment, or to challenge the appointment in this appeal. Pursuant to Indiana Appellate Rule 14(A)(6), an order appointing a receiver may be appealed as of right. Here, no such appeal was taken. On January 8, 2002, the trial court approved the final accounting of the receiver, over Brown's objection. However, the parties have not on appeal contested the appointment of the receiver or the approval of his final accounting.

"notice" of facts and ensuing instruction on their conclusive effect invaded the province of the jury.

Accordingly, we reverse and remand for further proceedings on the conversion claim consistent with this opinion.

Reversed and remanded.

RILEY, J., and DARDEN, J., concur.