James H. HIGGASON, Jr.,
Appellant–Plaintiff,

v.

Bruce LEMMON, et al., Appellee–
Defendant.

No. 77A01–0402–CV–71.

Court of Appeals of Indiana.

Nov. 30, 2004.

James H. Higgason, Jr. Westville, IN, Appellant pro se.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

James H. Higgason, pro se, appeals a grant of summary judgment in favor of all the defendants in yet another civil rights lawsuit filed from prison by Higgason. Those defendants, namely, Bruce Lemmon, Ron Batchelor, Vera Barnett, Dick Brown, Jerry Snyder, Ron McCullough, William Gadberry, F. Brannick, and Teresa Stephens were employees at the Wabash Valley Correctional Facility (the WVCF), where Higgason was incarcerated in the Special Housing Unit (the SHU). Upon appeal, Higgason challenges the grant of summary judgment.

We affirm.

The facts are that at all times relevant to the complaint filed by Higgason, he was incarcerated in the SHU at the WVCF. On December 20, 1999, Higgason filed a complaint seeking certification to file a class action:

[o]n behalf of all past, present, and future prisoners who have been, who are, and who will be confined within the SHU—which is an annex to the WVCF—who have been, and who will be, permanently divested of the majority of their personal property upon admittance to the SHU, and then permanently divested of all of their commissary and hygienic items, which are sold in plastic containers, upon transfer to ranges B–4–East, B–5–East or B–6–East, while other prisoners within the SHU are permitted to retain possession of identical items.

*Appellees' Appendix* at 5–6. At issue were prison regulations and policies that restricted the items of personal property that residents of certain blocks of the SHU could have in their cells. In Higgason's particular case, the policies meant that WVCF staff did not allow Higgason to have more than the maximum twenty-five stamped envelopes in his cell, and did not permit him to take squeezable hygiene bottles there.[1] The lawsuit was a civil rights suit filed under 42 U.S.C. §§ 1983 and 1988, in the Sullivan Superior Court. On February 28, 2003, the defendants in Higgason's lawsuit filed a motion for summary judgment. That motion was granted on January 13, 2004.

We note that before Higgason filed the instant lawsuit in Sullivan Superior Court, he filed another, broader complaint containing the identical allegations of restrictions on his property rights while housed

1. Apparently, Higgason had in the past used such bottles to spray urine and feces on WVCF correctional officers.

in the SHU. That complaint was filed on February 27, 1996, in the United States District Court for the Southern District of Indiana. On February 6, 1998, the district court granted summary judgment in favor of the defendants, dismissing all claims with prejudice. Higgason appealed that ruling and the Seventh Circuit Court of Appeals affirmed in all but one respect. The court modified the district court's decision to reflect a dismissal without prejudice in order to allow Higgason to file a state tort claim. The court stated:

> To the extent Higgason contends that the defendants deprived him of his property without due process, the deprivation (whether negligent or intentional) of an inmate's property does not amount to a constitutional violation if there is an adequate post-deprivation remedy available. Because the Indiana Tort Claims Act, Indiana Code § 34-4-16.5-1 et seq., provides an adequate remedy to redress an inmate's property loss, Higgason has no basis for an action with respect to this claim under 42 U.S.C. § 1983.

*Appellant's Appendix* at 6a (citation to authority omitted). Notwithstanding that accommodation, the subsequent state action filed by Higgason (i.e., the instant case) did not assert a claim under the Indiana Tort Claims Act, but instead re-asserted a § 1983 claim. Therefore, Higgason seeks a second bite at the apple on the § 1983 claim that the policies and regulation in question violate his civil rights.

■ Higgason is no stranger to the doctrine of res judicata, which prevents repetitious litigation of disputes that are essentially the same. *Dawson v. Estate of Ott,* 796 N.E.2d 1190 (Ind.Ct.App.2003). It consists of two distinct components, claim preclusion and issue preclusion. *Id.* Issue preclusion "bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudi-cated in a former suit and the same fact or issue is presented in a subsequent action." *Brown v. Jones,* 804 N.E.2d 1197, 1203 (Ind.Ct.App.2004), *trans. denied.* Where issue preclusion applies, the previous judgment is conclusive with respect to those issues actually litigated and decided. *Id.*

■ The United States District Court for the Southern District of Indiana had jurisdiction over Higgason's lawsuit in *Higgason v. County of Sullivan, et al.,* No. TH95-193-C-T/H. In the complaint initiating that proceeding, Higgason alleged the WVCF policies and practices limiting the number of stamped envelopes he could have in his cell and forbidding him from having squeeze bottles in his cell constituted a violation of his civil rights under 42 U.S.C. §§ 1983 and 1988. As set forth above, the District Court determined that Higgason was not entitled to relief in that respect and granted summary judgment in favor of the defendants. The Seventh Circuit later affirmed that ruling. Therefore the question of whether, on these facts, Higgason is entitled to relief under §§ 1983 and 1988 has been decided adverse to his claims. We have generally accepted that we must give full faith and credit to proceedings in federal courts. *Dawson v. Estate of Ott,* 796 N.E.2d 1190. Therefore, we conclude that any § 1983 or § 1988 claims premised upon the personal property restrictions in question are barred by the doctrine of res judicata. *See id.*

■ Although it is certainly not clear, Higgason's rambling, thirty-one-page complaint may arguably be understood to state claims other than the §§ 1983 and 1988 claims that are foreclosed by application of res judicata. To the extent that it does contain such claims, they are not properly before us because Higgason failed to exhaust his administrative remedies before filing the instant lawsuit. We stress here

that this discussion does not pertain to § 1983 claims. Rather, we refer here to any state tort claims that Higgason might have.

■ A claimant who has an available administrative remedy must pursue that remedy before being allowed access to the courts. *Boatwright v. Celebration Fireworks, Inc.*, 810 N.E.2d 766 (Ind.Ct.App. 2004). A party's failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction. *Id.* This policy avoids premature litigation, permits the compilation of an adequate record for judicial review, and affords agencies the opportunity and autonomy to correct their own errors. *Id.*

The WVCF had a grievance procedure in place to resolve the sort of complaints that Higgason lodges here. That procedure, as reflected in an exhibit filed by the defendants, was and continues to be a five-step process. Rick Watkins is a grievance specialist at the WVCF. Watkins submitted a sworn declaration stating that the claims upon which the instant lawsuit is based are grievable under the aforementioned procedures. Watkins's uncontested declaration states:

> Based upon by review of the offender grievance review and evaluation system which lists all grievances filed by offenders, offender Higgason did not exhaust the grievance procedure regarding any complaints he made in 1997, 1998, and 1999 regarding the confiscation of offender property. Specifically, Higgason only completed Step One, or Steps One and Two, or Steps One, Two and Three of the grievance procedure for every complaint he made in December 1997, and all of the calendar years 1998 and 1999. In most cases, Higgason completed only Step One. However, Higgason still did not exhaust the grievance proce-

> dure regarding any confiscation of offender property.

*Appellees' Appendix* at 95.

Higgason contends that he should be exempted from the exhaustion requirement because it would be futile. His claim of futility is based upon charges of incompetence and dishonesty among correctional officers and those charged with administering the grievance program. For instance, he claims WVCF personnel "were removing and disposing of grievances from Higgason's outgoing institutional mail bag that were tendered for filing, which were circumstances beyond Higgason's control that prevented those grievances from being filed, and caused the whole Offender Grievance Process to brake [sic] down and rendered it useless." *Appellant's Brief* at 85. He also claims that another grievance specialist indicated that there were data entry problems for a period of time, thus indicating that the grievance log sheet is unreliable.

■ Clearly, the rule requiring exhaustion of administrative remedies is not without exceptions. Those exceptions occur if administrative procedures are not capable of "answering the question presented" by a party's claim. *Abner v. Dep't of Health of State of Ind. ex rel. Indiana Soldiers' and Sailors' Children's Home*, 777 N.E.2d 778, 783 (Ind.Ct.App.2002), *trans. denied.* The exceptions to exhaustion have been explained as follows:

> A party is excepted from the exhaustion requirement when the remedy is inadequate or would be futile, or when some equitable consideration precludes application of the rule. To prevail upon a claim of futility, "one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." Furthermore, the requirement of exhaustion

of administrative remedies "will be relaxed where there is grave doubt as to the availability of the administrative remedy."

*Id.* at 783 (quoting *Smith v. State Lottery Comm'n of Ind.*, 701 N.E.2d 926, 931 (Ind. Ct.App.1998), *trans. denied*) (internal citations omitted). Our supreme court has observed that "the exhaustion requirement ... should not be dispensed with lightly on grounds of 'futility.'" *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind.2000), *amended on reh'g on other grounds*, 737 N.E.2d 719.

As indicated previously, Higgason's futility claim is based upon allegations of rampant dishonesty and misconduct on the part of WVCF officials and employees. According to Higgason, certain individuals at the WVCF conspire to thwart his attempts to prosecute grievances. In support of these allegations, Higgason names individuals who, he claims, pluck grievances out of his outgoing mail and discard them, thereby denying him the opportunity to file them in the first place. He also claims that deficiencies in the process whereby claims are recorded resulted in inaccurate logging and tracking of some of the claims he filed.

Ignoring for a moment the question of the credibility of Higgason's claims of corruption, we note Higgason's primary complaint is that some of his grievances were intercepted and then discarded without ever having been filed. The claimed futility, it would seem, was in getting the claim filed in the first place.[2] There is no indication that the named individuals responsible for allegedly discarding some of the claims filed by Higgason had any role in deciding a claim once it was successfully filed. In other words, Higgason makes no credible claim that the decision-making process itself was tainted. At most, Higgason claims that the record-keeping procedure was flawed for a time, and therefore that it might not be accurate with respect to tracking the filing and progress of his claims. Yet, it is significant to us that nowhere does Higgason claim that he did, in fact, pursue a single grievance through all five steps of the grievance process. As such, Higgason does not explain to our satisfaction why he did not complete the grievance process with respect to *any* of the numerous grievances that he did manage to successfully file. In short, Higgason has failed to convince us that pursuing his administrative remedies through to their conclusion would be an exercise in futility. Therefore, he is not exempted from the exhaustion doctrine.

In summary, to the extent that Higgason asserts claims under § 1983, such have already been decided against him and pursuant to res judicata principles we will not revisit those issues. All other claims are grievable under established WVCF grievance procedures, and Higgason has failed to exhaust his administrative remedies. Thus, the trial court is affirmed in all respects.

We have noted on a previous occasion that Higgason has generated a tremendous volume of litigation during his incarceration. In deciding previous appeals by Higgason, as in the instant case, we find ourselves revisiting issues that have already been decided by other courts in other proceedings. In an effort to address this unwarranted drain on the judicial system and constant harassment of the same few defendants, we have imposed screening mechanisms aimed at curtailing frivolous

---

2. We note also that this claimed deficiency was addressed and, presumably, remedied when a grievance specialist recommended that henceforth Higgason should file all grievances personally with the grievance specialist, and not via the prison mail system.

lawsuits filed by excessively litigious prisoners. *See, e.g., Parks v. State,* 789 N.E.2d 40 (Ind.Ct.App.2003), *trans. denied.* In fact, in apparent response to this aspect of the *Parks* opinion, our legislature passed Ind.Code Ann. § 34–13–7–1 (West, PREMISE through 2004 2nd Regular Sess.), which effectively codifies the conditions we placed upon Parks in that case. In Higgason's most recent appeal, we imposed a screening mechanism along the lines of *Parks* and I.C. § 34–13–7–1. In light of the issues raised in this appeal, we will once again place conditions upon the filing of future lawsuits concerning the matters alleged in the instant complaint.

Therefore, in addition to affirming summary judgment in favor of the defendants and against Higgason, we impose the following conditions upon Higgason concerning any future lawsuits that spring directly or indirectly from the matters addressed above: (1) Prior to filing any such lawsuit, Higgason shall submit to the trial court a copy of the complaint he wishes to file. (2) With respect to any matter that is grievable in the correctional facility in which Higgason is then incarcerated, Higgason shall submit documentation that he has exhausted his administrative remedies with respect to each claim. (3) Higgason shall also file a copy of all of the relevant documents pertaining to the ultimate disposition of each and every previous case instituted by Higgason against any of the same defendants or emanating, directly or indirectly, from complaints about the WVCF rules pertaining to claims that he has been deprived of personal property in violation of his constitutional rights. This includes, but is not limited to, the complaint, any motions to dismiss or motions for summary judgment filed by the defendants in those actions, the trial court order announcing disposition of the case, and any opinions issued in the case by any trial or appellate court. (4) Higgason shall file a legal brief, complete with competent legal argument and citation to authority, explaining to the court why the new action is not subject to dismissal by application of the doctrines of res judicata, law of the case, or failure to exhaust administrative remedies. If, after reviewing these materials, the trial court determines that the proposed lawsuit is frivolous, malicious, fails to state a claim upon which relief may be granted, or is otherwise utterly without merit (i.e., subject to dismissal by the exhaustion doctrine or res judicata principles), the court shall dismiss the proposed complaint. (5) Higgason is specifically instructed to attach to such complaint a separate copy of the final paragraph of this opinion.

Judgment affirmed.

BAKER, J., and DARDEN, J., concur.