

FILED

Oct 16 2025, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court


# IN THE
# Court of Appeals of Indiana

In the Matter of E.K., a Child in Need of Services, and
R.J. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

October 16, 2025

Court of Appeals Case No.
25A-JC-703

Appeal from the Lawrence Circuit Court

The Honorable Nathan G. Nikirk, Judge
The Honorable Anah Hewetson Gouty, Juvenile Referee

Trial Court Cause No.
47C01-2410-JC-336

---

**Opinion by Judge DeBoer**

Chief Judge Altice and Judge Pyle concur.

**DeBoer, Judge.**

## Case Summary

As a result of circumstances arising in one of her child's Juvenile Problem-Solving Court (JPSC) cases, the Indiana Department of Child Services (DCS) filed a petition against R.C. (Mother) alleging E.K. (Child) to be a child in need of services (CHINS).  At the fact-finding hearing, the trial court took judicial notice of the Chronological Case Summaries (CCSs) and orders issued in Child's previous probation cases, including the most recent JPSC case.  The court then issued its findings of fact and conclusions of law in which it determined that Child was a CHINS.  Mother appeals, asserting that the court exceeded the proper scope of judicial notice when it considered substantive facts within the JPSC orders rather than merely noticing the existence of those orders.  Finding reversible error, we reverse.

## Facts and Procedural History

Child was born on November 17, 2009 to Mother and Father, C.K.  Mother has primary custody of Child, as Father is not involved in Child's life.  During the relevant time, Child had two previous juvenile delinquency cases which he served on probation through the JPSC.  As participants in the JPSC, he and Mother were required to adhere to certain requirements, which included abstaining from drug use, and Mother was ordered to provide drug screens. On

multiple occasions, the JPSC found Mother noncompliant with its terms and conditions due to positive results on her drug screens. Although the drug screen results from her son's problem-solving court case were addressed by the JPSC, they were not made part of the Child's probation case.

[3] On October 8, 2024, while Child and Mother were still in the JPSC program, DCS filed a verified petition alleging Child to be a CHINS under Indiana Code section 31-34-1-1. In support of its petition, DCS alleged the following:

> a. On September 20, 2024[,] DCS Central Intake Unit received a report [a]lleging [Child] to be a victim of neglect due to caretaker impairment. Specifically, the report alleged that **[Mother] has had five positive drug screens through probation** and appears under the influence often.

> b. [Child] stays with his grandmother, . . . but he sees [Mother] everyday [sic] and [Mother] transports him to all his appointments.

> c. [Grandmother] denied that [Child] lives with her. She stated that he stays the night with her so she can get him up for school but [Mother] picks him up after school and on the weekends.

> d. **[Grandmother] denied that [Mother] had relapsed and is using [m]ethamphetamine despite the positive screens**.

> e. [Grandmother] refused to screen for DCS.

> f. [Family Case Manager (FCM)] Morehouse-Braswell observed marijuana lying on the couch at [Mother's] home.

g. [Mother] admitted occasional THC use to DCS **but did not admit to using any other illegal substance**s.

h. [Mother] was very agitated during FCM Morehouse-Braswell's interview.

i. [Mother] **insisted that probation[] screens are false**.

j. **[Mother] argued that probation's positive screens were wrong because they did not show her THC use or prescription medication**. She also insisted that the probation[] screens did not show levels. FCM Morehouse-Braswell explained that the probation screens did show her prescriptions and did show levels, however, **[Mother] continued to express disbelief**.

k. **After being shown[] the positive test** with levels and her prescriptive medications reflected on the results, [Mother] accused [Child's] probation officer of tampering with the screen.

l. **[Mother] refused to screen for DCS**.

m. FCM Morehouse-Braswell attempted to safety plan [sic], however, **[Mother] continued to deny any use other tha[n] THC.**

Appellant's Appendix Vol. 2 at 138-39 (emphasis added).

[4]     At the fact-finding hearing in the CHINS matter,[1] when Mother testified, she denied having "willingly" used methamphetamine since 2019.[2] Transcript Vol. 3 at 116. DCS then requested the trial court "take judicial notice that [Child] does have two . . . juvenile probation cases," and provided the cause numbers. Tr. Vol. 3 at 119. The court said that it would "take judicial notice of the CCS and any orders issued in those cases."[3] *Id.* DCS then continued with its witnesses, including FCMs Morehouse-Braswell and Kerr, Child's probation officer, and service providers. DCS did not attempt to formally admit Mother's JPSC drug screens into evidence, and any time a witness began to discuss the results of the screens, the trial court sustained Mother's objection.

[5]     The trial court issued its order which included findings of fact and conclusions of law. The court found Child to be a CHINS and that it was in his best interests to be removed from Mother and placed in Grandmother's custody. Because it took judicial notice of Child's two probation cases, the court attached the CCSs and orders from those cases to its own order to provide a complete record of the records it judicially noticed.

---

[1] We note that the same juvenile referee presided over Child's JPSC case and Mother's CHINS case. *See* Appellant's App. Vol. 2 at 20; *id.* at 38.

[2] When Mother denied "willingly" using methamphetamine since 2019, she did not elaborate on what she meant by "willingly," and DCS did not pursue it further. Tr. Vol. 3 at 116.

[3] Some of those orders found Mother to be "not in compliance with the Lawrence County [JPSC] Terms and Conditions due to: []positive screen for Methamphetamine/Amphetamine[.]" Appellant's App. Vol. 2 at 60; *see id.* at 74, 75, 60 (similarly noting various drugs screens by Mother which were positive for methamphetamine, THC, or both).

[6]     On February 20, Mother filed a motion to disqualify the trial court judge, a motion for a hearing pursuant to Indiana Rule of Evidence 201,[4] and a motion to continue the dispositional hearing scheduled for February 24. She asserted that the trial court "exceed[ed] the permissible scope of judicial notice" by referencing certain findings from the orders in Child's probation cases in its own findings and conclusions in the CHINS case. Appellant's App. Vol. 2 at 153.

[7]     At the February 24 hearing on Indiana Rule of Evidence 201(e), Mother asserted "the scope of judicial notice is limited to the fact of the record's existence rather than to any facts found or alleged within the record[.]" Tr. Vol. 3 at 194-95. The court primarily focused on Mother's failure to object at trial when it indicated it was going to take judicial notice of the CCSs and orders. However, the court stated it agreed with the case law Mother provided that the court could not "use the substance of the findings of those orders as a finding of fact" and it "took aim not to do that in its findings of fact[.]" *Id.* at 196.

[8]     The court ultimately denied Mother's motions to disqualify and to continue the dispositional hearing, and it denied any "further hearing" on Rule 201. Appellant's App. Vol. 2 at 163. Mother appeals.

---

[4] Rule 201(e) provides: "[i]f the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Ind. Evidence Rule 201(e).

## Discussion and Decision

[9] Mother argues the trial court erred by taking judicial notice of Child's JPSC records in a manner that exceeded the proper scope of judicial notice permitted under Evidence Rule 201.

[10] Preliminarily, we note that the State argues Mother has waived her argument that the trial court's judicial notice was improper because she failed to object at trial. *Hochstetler v. State*, 215 N.E.3d 365, 376 (Ind. Ct. App. 2023) (citing *Leonard v. State*, 80 N.E.3d 878, 884 n.4 (Ind. 2017)), *reh'g denied* ("It is well-established that an appellant may not raise issues for the first time on appeal and that failure to raise an issue in the trial court results in waiver of an issue for our consideration."). However, we do not find Mother waived this argument because she raised the issue with the trial court. While Mother did not voice an objection when DCS requested the court take judicial notice of Child's probation cases, she subsequently filed a motion for a hearing under Rule 201(e). *See* Appellant's App. Vol. 2 at 156. The court then entered an "Order Setting Hearing Pursuant to Ind. Evidence Rule 201(E)" and held that hearing four days after Mother filed her motion. Appellee's App. Vol. 2 at 2. Despite Mother's failure to contemporaneously object to the judicial notice issue at trial, she brought the matter before the trial court after it entered its order. Thus, this issue is not being raised for the first time on appeal.

[11] We now turn to the merits of Mother's argument. "[W]e review a trial court's decision to take judicial notice of a matter, like other evidentiary decisions, for

abuse of discretion." *Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016). There has been an abuse of discretion when the court's decision is "clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Abbott v. State*, 183 N.E.3d 1074, 1083 (Ind. 2022) (quoting *Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1204 (Ind. 2012)). Where, as here, the trial court entered findings and conclusions sua sponte, "'we apply the two-tiered standard of review of whether the evidence supports the findings, and whether the findings support the judgment.'" *In re D.P.*, 72 N.E.3d 976, 979 (Ind. Ct. App. 2017) (quoting *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014), *reh'g denied*). For any issue not covered by the court's findings, we apply the general judgment standard under which "we will affirm a judgment if it can be sustained on any legal theory supported by the evidence." *Id.* at 980.

[12] In this case, DCS alleged Child was a CHINS under Indiana Code section 31-34-1-1, which provides that

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent . . . to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>> (A) when the parent . . . is financially able to do so; or

> (B) due to the failure, refusal, or inability of the parent . . .
> to seek financial or other reasonable means to do so; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>> (A) the child is not receiving; and
>> (B) is unlikely to be provided or accepted without the
>> coercive intervention of the court.

[13] In other words, DCS had to prove that "(1) the parent's actions or inactions have seriously endangered the child; (2) the child's needs are unmet; and (3) those needs are unlikely to be met without State coercion." *In re N.E.*, 228 N.E.3d 457, 475 (Ind. Ct. App. 2024) (citing *S.D.*, 2 N.E.3d at 1287).

[14] Rule 201 governs the scope of judicial notice and states, in relevant part:

> (a) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice:
>> (1) a fact that:
>>> (A) is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction, or
>>> (B) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
>> (2) the existence of:
>>> . . .
>>> (C) records of a court of this state.
>
> (b) Kinds of Laws That May Be Judicially Noticed. A court may judicially notice a law, which includes:

. . .

> (5) records of a court of this state[.]

. . .

> (c) Taking Notice. The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.

. . .

> (e) Opportunity to Be Heard. On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

Ind. Evidence Rule 201.

[15] We first note that the parameters of judicial notice have not been clearly drawn, making our case law somewhat murky about that which a court may or may not judicially notice. Nonetheless, there are some consistent principles our appellate courts observe when analyzing whether the court's taking judicial notice was proper. Critically, "the ultimate purpose of judicial notice is *efficient consideration of uncontroversial facts*[.]" *Horton*, 51 N.E.3d at 1161 (citing *Baran v. State*, 639 N.E.2d 642, 647 (Ind. 1994)) (emphasis in original). Furthermore, even when court records are judicially noticed, "facts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice." *In re P.B.*, 199 N.E.3d 790,

796-97 (Ind. Ct. App. 2022) (quoting *D.P.*, 72 N.E.3d at 983), *reh'g denied*, *trans. denied*. "Unless principles of claim preclusion apply, judicial notice should be limited to the fact of the record's existence, rather than to any facts found or alleged within the record of another case." *Id.* at 797 (quoting *D.P.*, 72 N.E.3d at 983). However, "[j]udicial notice 'encompasses facts ascertainable from sources that cannot reasonably be questioned, and presumably court records are such sources,' in the absence of evidence tending to rebut that presumption." *Horton*, 51 N.E.3d at 1161 (quoting *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004), *trans. denied*).[5]

[16] At the fact-finding hearing, DCS requested that the court judicially notice "that [Child] does have two . . . juvenile probation cases[.]" Tr. Vol. 3 at 119. The court then said it would "take judicial notice of the CCS and any orders issued in those cases." *Id.* Mother argues that judicial notice should have been limited to these records' *existence*, but that the court's findings and conclusions show it went beyond their existence and instead relied on substantive facts within those records.

[17] Mother directs us to the following findings and conclusions as evidence of the court's reliance upon the content of the records:

---

[5] As noted in both *D.P.* and *P.B.*, *Brown* was decided prior to an amendment of Rule 201. The amendment allowed judicial notice of state court records and addressed a court taking judicial notice of its own records. Despite *Brown's* timing, we agree that "its general observations regarding the proper extent of judicial notice of a court record, when such notice is permitted, are still valid." *D.P.*, 72 N.E.3d at 983 n.3; *see P.B.*, 199 N.E.3d at 797 n.3.

25. The Court issued Orders after JPSC status hearings with findings that Mother **was noncompliant due to results of Mother's random drug screens** and Mother's failure to ensure [Child] attended school regularly.

* * *

50. [Child's] physical and mental condition is seriously impaired or seriously endangered due to Mother's substance use. **While there were no positive drug screen results admitted in the fact-finding to show Mother has tested positive for methamphetamine through this pending action, Mother has consistently refused to screen for DCS,[6] and the Court has taken judicial notice of [Child's] juvenile delinquent cases that note via court orders Mother's noncompliance due to substance use.**

* * *

**Mother argues there is no single positive screen for methamphetamine** from [her]; however, there is ample evidence Mother has been referred for substance use treatment and **another court made findings of a pattern of illegal substance use in the last few months**.

Appellant's App. Vol. 2 at 16, 18, 19 (emphasis added).

---

[6] We note that we have found no evidence in the record that Mother was under a court order or otherwise required to screen for DCS.

[18]    At the Rule 201(e) hearing, when Mother argued that the trial court improperly considered substantive facts from the JPSC orders in its fact-finding order, the trial court stated:

> [] I do think you are correct in that when a court takes judicial notice, they can't use the substance of the findings of those orders as a finding of fact. I agree with that contingent [sic] and I agree that that's well settled in the law.
>
> So the Court took aim not to do that in its findings of fact, which is why at no point would I take -- if there was a finding in a court -- from Problem-Solving Court that said she tested positive for methamphetamine, I would not make that finding of fact in the CHINS findings of fact trial order. I don't think the Court should do that when it notes.

Tr. Vol. 3 at 196. Then, in its order denying Mother's motions to disqualify and for further hearing on Rule 201, the court included a lengthy footnote regarding its judicial notice. The footnote stated:

> Mother [] contends the Court's findings of fact incorporated the judicially noted court records beyond the permissible scope of judicial notice; **yet, the Court did not take substantive findings from the court records of [Child's] juvenile delinquency cases and cite them as findings in its fact-finding order understanding the rules of evidence were applied differently in review hearings in delinquency versus the fact-finding in this case.** Notwithstanding, the Court did take [j]udicial [n]otice of the records, those court records are relevant to these proceedings, **and the court records do carry weight in the evidence.**

Appellant's App. Vol. 2 at 163 (emphasis added). We agree with Mother that the court's findings show that it improperly took judicial notice of substantive facts within the JPSC orders, specifically that Mother had positive drug screens.

[19] First, we are not persuaded by the trial court's attempt to distinguish what it included in its findings from the substantive facts in the JPSC orders. Simply because the court did not copy and paste the findings from the JPSC orders into its CHINS findings of fact does not mean it did not "use the substance of the findings of those orders" in its decision in the CHINS case. Tr. Vol. 3 at 196. Finding 25 in the fact-finding order states "[t]he Court issued Orders after JPSC status hearings **with findings that Mother was noncompliant due to results of Mother's random drug screens**[.]" Appellant's App. Vol. 2 at 16 (emphasis added). Finding 50 says that "[w]hile there were no positive drug screen results admitted in the fact-finding to show Mother has tested positive for methamphetamine . . . , the Court has taken judicial notice of [Child's] juvenile delinquent cases **that note via court orders Mother's noncompliance due to substance use**." *Id.* at 18 (emphasis added). We find no real distinction between the JPSC's finding that Mother had a "positive drug screen for" drugs and the trial court's finding in its CHINS order that the JPSC found Mother was "noncompliant due to results of [her] random drug screens[.]" *Id.* at 16, 60. Thus, it is not clear to us how the court could have entered Findings 25 and 50 without taking substantive findings from the JPSC orders. Again, while the trial court may not have *quoted* the JPSC findings, the CHINS order contained references to the JPSC findings. And those findings—made in separate

proceedings in Child's JPSC case—were used to establish Mother's drug use in the CHINS case.

[20] Second, as is clear in Rule 201, a court can judicially notice facts. *See* Evid. R. 201. However, those facts must be "'ascertainable from sources that cannot reasonably be questioned[.]'" *Horton*, 51 N.E.3d at 1161 (quoting *Brown*, 804 N.E.2d at 1202). And while the substantive facts challenged here came from court orders, which are presumably "sources that cannot reasonably be questioned," we find this case to be a unique circumstance in which the presumption should not apply. *Id.* (quoting *Brown*, 804 N.E.2d at 1202).

[21] The substantive facts considered by the trial court were derived from orders issued by the JPSC, a court in which many typical due process protections are not observed. Problem-Solving Courts are purposefully non-adversarial, as the "review hearings occur as informal proceedings in which witnesses are not sworn and private counsel are not present." *In re K.W.*, 247 N.E.3d 1250, 1262 (Ind. Ct. App. 2024). Even here, the trial court acknowledged that "the rules of evidence [are] applied differently in review hearings in delinquency[.]" Appellant's App. Vol. 2 at 163.

[22] Furthermore, Mother's drug screens were not filed or admitted into evidence in Child's JPSC case, meaning they are not part of the court's record of the case. A problem-solving court team will often take a parent's positive drug screens into consideration when determining whether to implement additional services for the child, parent, or family unit. However, the advisement of a parent's

positive drug screen to the problem-solving court team often does not carry the due process protections that justify its use of that information in a completely separate hearing at which a parent's access to her child may be compromised. The only support in the JPSC's record for the results of Mother's drug screens came from the discussions had during the JPSC review hearings, without Mother being placed under oath, having her own attorney present, or allowing her a meaningful opportunity to challenge the very screens she contested. At the CHINS fact-finding hearing, DCS did not introduce evidence of Mother's JPSC drug screen results, yet the court considered and seemingly relied upon the exact same evidence through the orders of which it took judicial notice. Given that the JPSC orders rely on findings made in JPSC hearings where important procedural protections were not afforded to Mother, we conclude this is a limited circumstance in which the court's JPSC orders are sources that can reasonably be questioned specifically as to substantive facts regarding Mother's drug screens.

[23] Third, while we recognize that the purpose of judicial notice is the "*efficient* consideration of uncontroversial facts," Mother's alleged substance use and Mother's drug screen results are not uncontroversial facts. *Horton*, 51 N.E.3d at 1161 (citing *Baran*, 639 N.E.2d at 647) (emphasis in original). In fact, Mother maintained throughout the CHINS proceeding that she had not used anything other than THC since 2019 and that she had not had a positive test since then. *See* Tr. Vol. 3 at 116 (where DCS asked Mother, "If you had a positive screen since [2019], do you have an explanation?" and Mother responded, "No.

'Cause [sic] there's not."). Furthermore, efficiency cannot be a substitute for ensuring parents are afforded due process and the State is held to its burden of proof. *See In re A.C.*, 198 N.E.3d 1, 14 (Ind. Ct. App. 2022) ("A parent has a fundamental right to raise his or her child without undue influence by the state."), *reh'g denied*, *trans. denied*, *cert. denied*.

[24] DCS never attempted to introduce Mother's drug screens into evidence, and every time a witness began to discuss the results of those drug screens, the trial court sustained Mother's objections. *See* Tr. Vol. 3 at 109, 120, 122, 123, 125, 134; *see also D.P.*, 72 N.E.3d at 982 (finding judicial notice of preliminary reports and filings in the CHINS proceeding referencing Father's drug use to be improper in part because "[d]uring the fact-finding hearing, DCS's attempts to present evidence of Father's continued drug use were objected to, and the trial court sustained those objections"). For these reasons, we conclude that it was an abuse of discretion for the trial court to judicially notice the substantive findings from the JPSC orders. Thus, any findings and conclusions relying on such information are clearly erroneous.

[25] Despite the State's argument to the contrary, we agree with Mother that this was not harmless error. Indiana Appellate Rule 66(A) states that

> [n]o error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.

"When an appellate court must determine whether a non-constitutional error is harmless, Rule 66(A)'s 'probable impact test' controls." *Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023), *reh'g denied*, *cert. denied*. The party asserting that an error is prejudicial—*i.e.*, not harmless—must demonstrate "how, in light of all the evidence in the case, the error's probable impact undermines confidence in the outcome of the proceeding below." *Id.* This consideration is not whether the remaining evidence was sufficient; it is a comparison of what evidence the trier of fact considered and what it "should have" considered. *Id.* "Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined." *Id.* "A finding of fact is not prejudicial to a party *unless* it directly supports a conclusion." *In re B.J.*, 879 N.E.2d 7, 20 (Ind. Ct. App. 2008), *trans. denied* (emphasis added).

[26] Having considered the entire record, the trial court's erroneous reliance on improperly judicially noticed facts readily undermines our confidence in the outcome of Mother's case. The primary allegations supporting DCS's CHINS petition were based on Mother's alleged positive drug screens from the JPSC case. *See* Appellant's App. Vol. 2 at 139. However, there were no drug screens admitted into evidence, and any testimony about screens was limited to their existence rather than their results. Nonetheless, the trial court concluded that:

> Child's physical or mental condition is seriously impaired or seriously endangered due to the actions of the [] Child's Mother and Father. . . . Mother has been unable to ensure [Child] attends school and is unwilling to make changes to provide for [Child's care and supervision. The court has serious concerns Mother has

a substance use addiction that is left untreated. Multiple witnesses describe her as exhibiting symptoms of illegal substance use and **the JPSC referred her to services due to results of drug screens**.

**Mother argues there is no single positive drug screen for methamphetamine from Mother;** however, there is ample evidence Mother has been referred for substance use treatment and **another court made findings of a pattern of illegal substance use in the last few months.** Mother has not successfully completed services or participated consistently, **a DCS investigation was opened to address a reported positive screen, and Mother's circumstances have remained unchanged since DCS filed its petition.**

*Id.* at 19 (emphasis added).

[27]   It appears from this conclusion, and the findings discussed previously, that the trial court placed significant weight on the drug screen results—which were contained only in the JPSC orders. Those results were not cumulative evidence or "merely harmless surplusage" supported elsewhere in the record. *B.J.*, 879 N.E.2d at 20. The other evidence comes from testimony regarding Mother's behaviors (such as "rapid speech"), referrals to substance use programs, refusal to drug screen for DCS, and her inability to ensure Child's attendance at school. Appellant's App. Vol. 2 at 15; *see* Tr. Vol. 3 at 162. However, the CHINS case was initiated as a result of Mother's JPSC drug screens, and those screens form the primary basis for the factual allegations in DCS's petitions. Findings 25 and 50 and the court's overall conclusion that Child is a CHINS, particularly as to serious impairment or endangerment, are significantly intertwined with the

improperly considered drug screen results. Thus, our review of the entire record leads us to the conclusion that the court's reliance on the substantive facts from the JPSC orders was not "sufficiently minor" or harmless; it was reversible error.[7] *Hayko*, 211 N.E.3d at 492.

## Conclusion

[28] We conclude the trial court committed reversible error by considering and relying on the substantive facts contained in the JPSC's orders. Therefore, we reverse the trial court's finding that Child is a CHINS.

[29] Reversed.

Altice, C.J., and Pyle, J., concur.

---

[7] Mother also argues on appeal that she was denied a hearing pursuant to Evidence Rule 201 and that the denial of such hearing was not harmless error. *See* Appellant's Br. at 30. However, we find this argument to be without merit. Upon Mother's motion for a hearing pursuant to Rule 201, the trial court issued an "Order Setting Hearing Pursuant To Ind. Evidence Rule 201(E)." Appellee's App. Vol. 2 at 2. That hearing was held on February 24, 2025. Nonetheless, Mother contends that "[t]he trial court . . . refused to allow [her] to have the Rule 201(e) hearing she requested. *At the hearing*, the trial court focused on the lack of contemporaneous objection to judicial notice." Appellant's Br. at 30 (emphasis added). Thus, Mother recognizes that there was a hearing and merely challenges the substance of that hearing. We are not persuaded. Rule 201(e) provides a party the opportunity "to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Evid. Rule 201(e). The record shows that Mother was provided this opportunity. The trial court gave Mother the time to offer her perspective and additional time to make a record for appeal, at which time she raised arguments as to the propriety of the judicial notice itself and facts that were judicially noticed.

ATTORNEYS FOR APPELLANT

Daniel A. Dixon
Patrick J. Smith
Lawrence County Public Defender Agency
Bedford, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana