



FILED

Feb 28 2025, 11:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Court of Appeals of Indiana

J.W.,

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

February 28, 2025

Court of Appeals Case No.
24A-JT-2370

Appeal from the St. Joseph Probate Court

The Honorable Loris P. Zappia, Judge

The Honorable Ashley Mills Colborn, Magistrate

Trial Court Cause Nos.
71J01-2405-JT-51, 71J01-2405-JT-52

---

**Opinion by Chief Judge Altice**
Judges Brown and Tavitas concur.

**Altice, Chief Judge.**

## Case Summary

J.W. (Father) appeals following the involuntary termination of his parental rights to M.W. and R.W. (Children). Father contends that the trial court violated his due process rights by entering judgment against him without conducting a proper final hearing.

We affirm.

## Facts & Procedural History

Father and M.L. (Mother) are the biological parents of M.W., born December 15, 2015, and R.W., born March 28, 2018.[1] Children were removed from Father's care on January 6, 2022, after the Indiana Department of Child Services (DCS) received an allegation of possible neglect because Children's half-brother was found unconscious after ingesting an unknown substance in Father's home. Children were in the home when this occurred. In addition to the medical emergency, DCS was concerned that Mother had abandoned Children, leaving them in Father's care. Children were then placed in relative care where they are believed to have been victims of sexual abuse by an adult in the home. At the time of the removal from Father's home, Father had pending charges for possession of cocaine and methamphetamine.

---

[1] Mother's parental rights were also terminated. Mother does not participate in this appeal.

On January 10, 2022, DCS filed a petition alleging Children were children in need of services (CHINS). On April 25, 2022, after a fact-finding hearing, the court adjudicated Children to be CHINS. On May 18, 2022, the court held a dispositional hearing and ordered Father to participate in services designed for reunification with Children. On March 7, 2024, the court amended Children's permanency plan to include a concurrent plan of adoption. DCS filed petitions to terminate Father's parental rights to Children on May 22, 2024. A summons informing Father that a hearing on the termination petition was set for July 8, 2024, and warning him that, should he fail to appear, the trial court could terminate his parental rights in his absence, was served on Father on June 4, 2024.[2] Father did not appear for the July 8 hearing. In his absence, the court allowed DCS to present its evidence.

At the hearing, DCS called two witnesses—Family Case Manager (FCM) Colin Miller and Court Appointed Special Advocate (CASA) Katie Bailey. FCM Miller testified that Father had not alleviated the reason for Children's removal and continued placement outside the home because he had not completed any of his court-ordered services and that Father was not in a position to have Children placed back in his home. FCM Miller also testified that Children exhibit sexually maladaptive behaviors and must be supervised when around other children for extended periods of time and that Father did not have the

---

[2] Father does not deny that he received notice of the hearing.

ability to care for both of them. FCM Miller opined that termination of Father's parental rights was in the best interests of Children.

[6] CASA Bailey testified that Children did not want to see Father. She also noted her understanding that Father was living at the home where Children alleged they were sexually abused by an adult in the home.[3] CASA Bailey testified that Father had no legitimate employment and no suitable place to live. She also informed the court that Father had been stopped on his way to supervised visitation with one of his other children and found to be in possession of "THC oil or gummies or something." *Transcript* at 8. Whether Father would face charges had yet to be determined. CASA Bailey testified that it was her opinion that termination of Father's parental rights was in Children's best interests. After CASA Bailey testified, the court found that DCS had met its burden with respect to Father. This hearing lasted five minutes and was continued to August 12, 2024, so DCS could serve Mother with notice of the hearing by publication.

[7] At the August hearing the court heard evidence regarding Mother. Father, despite notice, did not appear. FCM Miller again testified as to the reason for DCS involvement and confirmed that neither parent had successfully remedied the reasons for removal of Children. FCM Miller confirmed that Children did not want to see Father and that Father had not participated in services. He

---

[3] There is no suggestion that Father was the perpetrator of the alleged abuse.

again testified that termination of Father's parental rights was in the best interests of Children and that adoption of Children was a satisfactory plan.

[8] CASA Bailey also testified at this hearing, stating that Father had not done anything to remedy the original reason for DCS involvement and opining that the parent-child relationship posed a threat to Children. Noting that Father had been pulled over and found to be in possession of CBD oil or marijuana and that he had not submitted to random drug screens, CASA Bailey could not say that Father would be a sober caregiver for Children. She also stated, "To my knowledge, [Father] doesn't have [] stable employment nor stable housing." *Id.* at 17. CASA Bailey restated her opinion that termination was in Children's best interests and that adoption was a satisfactory plan. At the conclusion of this eight-minute hearing, the court stated on the record its determination that DCS had met its burden as to Father and Mother. The same day, the trial court issued its written order terminating Father's parental rights. The court set out its findings of fact and its conclusions that DCS had met the elements of its petition. Father now appeals.

## Discussion & Decision

[9] The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *Thompson v. Clark Cnty. Div. of Family & Children*, 791 N.E.2d 792, 794-95 (Ind. Ct. App. 2003), *trans. denied*. When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due

process. *Lawson v. Marion Cnty. Off. of Family & Children*, 835 N.E.2d 577, 579 (Ind. Ct. App. 2005). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). The nature of process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.*; *A.P. v. Porter Cnty. Off. of Family & Children*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied*. The balancing of these factors recognizes that although due process is not dependent on the underlying facts of the particular case, it is nevertheless "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation omitted).

[10] Obviously, both the private interests and the countervailing governmental interests that are affected in a termination of parental rights proceeding are substantial. *See Thompson*, 791 N.E.2d at 795 (discussing private and governmental interests in termination of parental rights proceedings). Thus, whether a parent's due process rights have been violated comes down to the risk of error created by the challenged procedure as balanced against the competing interests. *See id.*

[11] Father does not challenge the court's findings of fact as unsupported by the evidence, nor does he contest that he had notice of the termination hearing and

failed to appear. Father argues only that the court's order terminating his parental rights should be set aside because concepts of due process require DCS to enter exhibits into evidence and to elicit more details from its witnesses. Father also argues that principles of due process required the trial court to play a role in the fact-finding process. He suggests that the trial court's failure to require additional evidence or to question witnesses on his behalf created a "risk of error" in the court's conclusions because DCS's evidence was "entirely unchallenged." *Id.* at 9.

[12] In support of his argument, Father relies on *Thompson*, *supra*. In that case, mother did not appear for the final hearing, and, over her counsel's objection, the trial court denied her request for yet another continuance.[4] The trial court then conducted the hearing as a summary proceeding where no witnesses testified and no cross-examination was conducted. That is, counsel for DCS and mother gave summaries of what their witnesses would have testified to had a full hearing been conducted and the trial court permitted the attorneys to introduce exhibits without sponsoring witnesses or foundations. The majority concluded that even though mother was provided with the opportunity to be heard at a meaningful time, she was not given the opportunity to be heard in a meaningful manner. The majority therefore held that mother was denied due

---

[4] In the twelve months prior to the final hearing, mother sought and was granted six separate requests for a continuance. On the day of the scheduled final hearing at issue, mother contacted her attorney and the court and claimed that she had checked herself into a drug and alcohol abuse treatment facility and wanted another continuance. The court ultimately discovered that mother had lied to the court concerning her whereabouts.

process as the manner in which the evidence was presented amounted to "no hearing at all" on the termination petition. 791 N.E.2d at 796.

[13] This case is distinguishable from *Thompson*. Here, DCS called two witnesses to testify under oath as to each element of its termination petition. Through these witnesses, DCS established that Children had been removed from the home for the requisite period of time, the reason for their removal, that Father had not participated in services or established that the circumstances that resulted in placement outside the home would be remedied, that there was a satisfactory plan for the care and treatment of Children, and that termination of Father's parental rights was in Children's best interests. DCS was not required to present more evidence than necessary to prove each element of its termination petition. *See Young v. Elkhart Cnty. Off. of Family & Children*, 704 N.E.2d 1065 (Ind. Ct. App. 1999) (noting that although a party need not attend a final hearing, a hearing must be conducted at which evidence is presented to establish all of the elements necessary for termination). Had Father appeared for the termination hearing, he could have asked the witnesses to further explain themselves and asked the questions posed in his brief.

[14] Father suggests that the trial court was required to cross-examine the witnesses. A trial court is permitted to question witnesses to aid in the fact-finding process, i.e., to develop the truth or obtain facts that may have been overlooked by the parties. *See, e.g., Rosendaul v. State*, 864 N.E.2d 1110, 1115 (Ind. Ct. App. 2007), *trans. denied*. Nevertheless, "[a]t all times the trial court must maintain an impartial manner and refrain from acting as an advocate for either party. A

violation of due process occurs where a trial judge combines the roles of judge and advocate." *Chappey v. Storey*, 204 N.E.3d 932, 939 (Ind. Ct. App. 2023) (internal quotes omitted), *trans. denied*. Thus, contrary to Father's argument, the trial court was not required to, and indeed should not have, assumed the role of defense attorney and advocated for Father when he chose not to attend the termination hearing. As noted above, DCS presented testimony from two witnesses as to the elements of the termination petition. The court found FCM Miller and CASA Bailey to be credible and accepted their respective testimonies. Although the hearing was short, Father has not established that the manner in which the court conducted the termination hearing violated his due process rights.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

A. Robert Masters
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana